# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

## THE PEORIA AND PEKIN UNION RAILWAY COMPANY

*v.*

## THE PEOPLE *ex rel.* Knupp, County Collector.

*Opinion filed December 18, 1899.*

1. TAXES—*when order by county board to raise excess tax is sufficient.* The "order" required by section 27 of the act on counties, (Rev. Stat. 1874, p. 308,) to be entered of record by the county board whenever it shall deem it necessary to assess taxes in excess of the constitutional rate of seventy-five cents on the dollar, is sufficient if it sets forth substantially the amount of the excess tax and the purpose for which it is needed.

2. SAME—*order for excess tax need not specify the number of years it is needed.* Under the statute it is not necessary that the county board's order for raising a tax in addition to the constitutional limit shall specify the number of years the excess will be required, unless the excess levy is to pay interest or principal upon bonds.

3. SAME—*preamble and resolution are a part of county board's order.* The preamble and resolution are a part of the county board's order for raising an excess tax.

4. SAME—*purpose of county board's order is to submit question to vote of people.* The purpose of the county board's order to raise an excess tax is not to authorize the levy but to submit the question of the additional levy to a vote of the people.

5. SAME—*what will not invalidate excess levy by a county.* That an excess tax assessed under a vote of the people for a certain year to pay off the' floating debt of the county is charged to have been used to pay current expenses does not invalidate the excess levy under the same vote for the succeeding year, where the excess raised in the two years is not sufficient to pay the floating debt, since such question cannot arise until the amount collected under the vote exceeds, in its entirety, the amount authorized to be raised.

6. SAME—*that county bonds are not due does not invalidate tax to pay them off.* That county bonds do not mature for several years does not invalidate a tax levy for collecting a sum for their payment.

APPEAL from the County Court of Peoria county; the Hon. R. H. LOVETT, Judge, presiding.

STEVENS, HORTON & ABBOTT, for appellant.

JOHN DAILY, State's Attorney, (R. J. COONEY, of counsel,) for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

To an application for judgment to the county court of Peoria county, at its May term, the appellant appeared and filed objections, showing that it had paid all taxes legally assessed against its property for the year 1898 excepting the county tax, amounting to $993.28, and the Peoria city tax, amounting to $759.57, for failure to pay which judgment was sought. On the hearing it was ad-'mitted that the item of $759.57 for city tax was illegal, excessive and void, and the objection on account thereof was sustained. The ground of appellant's objection to the county tax is, that the tax extended against its property was at the rate of one dollar on each $100 of valuation, which rate exceeds the limit imposed by law by twenty-five cents, the excess amounting to the said sum of $993.28, and that that item so remaining unpaid by appellant was levied without authority, and is excessive and void. This objection the court overruled and rendered judgment for the same, together with interest and

costs, amounting to $1013.40, from which appellant prosecutes this appeal.

It was stipulated on the hearing that the total assessment of appellant's property in Peoria county for the year 1898 amounted to $397,312, and that a county tax was extended against it of one dollar, amounting in the aggregate to $3973.12, three-fourths of which appellant had paid; that the county tax was extended at that rate by virtue of a resolution adopted by the board of supervisors at the September meeting, 1898, as follows:

"*Resolved,* That the sum of one dollar on the $100 valuation be levied for county purposes, and the clerk of the court is hereby instructed to extend said rate upon all taxable property in the county."

That no part of the levy so made was to pay indebtedness existing at the time of the adoption of the present constitution; that at the September meeting of the supervisors, 1896, the following resolution was adopted:

"Whereas, the levy of seven and one-half mills on the one dollar, as provided by statute, has failed to produce an amount sufficient to pay the expenses of the county board; and whereas, the floating debt of the county has been increased each year, until it now amounts, with the bills audited at this session of the board, to about the sum of $100,000; therefore

"*Resolved,* That the county clerk be instructed to give the proper notice that the question of levying an additional tax of not to exceed two and one-half mills on the dollar per annum until a sufficient amount is raised to meet the indebtedness of the county, will be submitted to be voted upon at the coming November election, and that he cause to be printed on the ballots to be used at said election the words: 'For additional tax levy not to exceed two and one-half mills;' 'Against additional tax levy not to exceed two and one-half mills.' "

That the notice given by the clerk was in the following words: "The question of levying an additional tax of not to exceed two and one-half mills on the dollar per annum until a sufficient amount is raised to meet the indebtedness of the county will be submitted, and that the ballots have printed on them the following: 'To levy an

additional tax of not to exceed two and one-half mills on the dollar per annum until a sufficient amount is raised to meet the indebtedness of the county: Yes....No....;'" that of a total of 19,898 votes cast, 2438 voted yes and 2162 voted no; that at the time of the adoption of the resolution the indebtedness of the county amounted to the sum of $113,196, but that that sum included bonds amounting to $40,000, issued on account of the insane asylum, which do not mature until 1903; that the indebtedness allowed at the September meeting amounted to the sum of $27,731; that the tax was extended for the year 1897 at the rate of one dollar, and that the county tax produced by that rate amounted for that year to $152,000, and that that rate will produce about the same for the year 1898; that no part of the levy made for the year 1897 was for the payment of any part of said $40,000 above mentioned; that the proceedings above set forth are the only authority for the power to levy a county tax in excess of seventy-five cents on the $100 or for the extension of the tax by the county clerk. It further appeared from the testimony of the assistant county treasurer that one-fourth of the net amount of the taxes levied for the year 1897 amounted to something over $38,600, which was placed to the credit of a special county fund; that afterwards they took up "time order No. 455," for $37,000, money borrowed in New York City in September, 1897, together with interest thereon, amounting to $800, which left a balance to the credit of that fund of some $260; that the money obtained on the New York loan was used to pay current expenses of the county; that on September 12, 1896, in addition to the $40,000 of bonds, there were outstanding time orders to the amount of $65,000, of which time orders $40,500 are still unpaid.

The constitution and laws of the State prohibit a levy of taxes for county purposes in excess of seventy-five cents on the $100 except to pay indebtedness existing at the adoption of the present constitution, unless the same

be authorized by a vote of the people of the county. Section 27 of chapter 34 of the Revised Statutes provides as follows: "Whenever the county board shall deem it necessary to assess taxes, the aggregate of which shall exceed the rate of seventy-five cents per $100 valuation of the property of the county, except when such excess is to be used for the payment of indebtedness existing at the adoption of the constitution, the county board may, by an order entered of record, set forth substantially the amount of such excess required, and the purpose for which the same will be required, and if for the payment of interest or principal, or both, upon bonds, shall in a general way designate the bonds and specify the number of years such excess will be required to be levied, and provide for the submission of the question of assessing the additional rate required to a vote of the people of the county at the next election for county officers after the adoption of the resolution; and it shall be the duty of the county clerk, in his election notice, to give notice of such submission. The votes therefor shall be, 'For additional tax,' and those against shall be, 'Against additional tax.' The vote shall be canvassed and returned the same as those for county officers, and if a majority of the votes cast upon the question are 'For additional tax,' then the county board shall have power to cause such additional tax to be levied and collected in accordance with the terms of such resolution, and the money so collected shall be kept as a separate fund and disbursed only for the purposes for which the same was raised: *Provided*, any surplus that may remain after the payment of all demands against said fund may be used for other purposes."

Counsel for the appellant insist that the resolution adopted by the county board of Peoria county fails to comply with the requirements of the statute in three particulars, viz.: That it fails to specify the amount of excess required, the purpose for which it is required, or

the number of years it will be levied, and that because thereof there was no authority to the county clerk for the extension of the excess levy. We cannot concur in this view. The language of the statute requires only that the board shall enter an order of record, in which shall be set forth substantially the amount and purpose of the excess. It does not require any particular form of certificate, or designate whether its action shall be expressed by motion in writing, by resolution or otherwise. It will be noticed that the "order" which the county board is to enter of record does not, in itself, authorize the levy of the additional tax. Its only purpose is to prepare the question for submission to the people, for determination by them. The preamble and the resolution are both part of one and the same "order," and these set out in an ample manner all the statute requires, viz., a substantial statement of the amount of the indebtedness, to-wit, $100,000, and that the object of the levy is to pay this amount, that it was incurred in meeting the expenses of the county, and that the indebtedness is carried as a floating debt.

Counsel contend, however, that the order made by the board should specify the number of years such excess shall be required. The statute does not require that this shall be done unless the purpose of the excess levy is the payment of principal or interest, or both, upon bonds.

Appellant contends that the words "and specify the number of years such excess will be required," are not qualified by the words which immediately precede them, and that in every case, whether the levy be for the payment of bonds or indebtedness of whatsoever character, the number of years should *eo numero* be specified. We do not so interpret the language. But even should that be conceded to be the legislative intent, still the order as made by the county board and the question submitted for vote by the people specify with mathematical exactness for what length of time the levy shall be made, viz., until by the levy of two and one-half mills on the dollar

per annum a "sufficient amount is raised to meet the indebtedness of the county." This indebtedness was approximately $100,000, and, as afterwards determined, was $113,196, including the $40,000 of bonds outstanding, maturing in 1903. The amount already realized from the additional levy in the year 1898 was $38,600, and a slight mathematical calculation will show that at the same rate it will require two additional collections to derive a sufficient fund to meet the indebtedness for which the tax was levied.

It is urged that the tax assessed under this vote, for the year 1897, was improperly used to pay current indebtedness of the county. That does not render the tax levied in 1898 under the same vote invalid, because if the amount levied for 1898, with the amount levied for 1897, was insufficient to pay the floating indebtedness existing at the time the proposition was directed to be submitted to the voters of the county, the fact of an improper use of the money collected under the levy of 1897 cannot render invalid the levy of 1898. Such question cannot be presented until, by virtue of a tax levy made under this vote, the amount sought to be collected in its entirety would exceed the amount authorized to be raised by this vote. The question is not now presented as to whether a greater sum than $100,000 can be raised, even though the indebtedness existing at the time of the vote amounted to $113,196. On that question we refrain from expressing an opinion. Even though the $40,000 of bonds issued for the insane asylum do not mature until 1903, the levy of the tax for the collection of a sum for their payment at an earlier date than the time of their maturity cannot render the levy invalid.

From a consideration of the entire record it must be held that it was not error to overrule the objection.

The judgment of the county court of Peoria county is affirmed.

*Judgment affirmed.*