## The Chicago, Burlington and Quincy Railroad Co.

*v.*

### The People *ex rel.* Frank Sonnet, County Treasurer.

*Opinion filed December 22, 1904—Rehearing denied Feb. 9, 1905.*

1. Constitutional law—*act of 1901, concerning levy of taxes, is not unconstitutional.* The act of 1901, (Laws of 1901, p. 272,) concerning the levy and extension of taxes, in so far as it requires the assessed valuation as equalized by the State board to be used in determining the maximum amount of tax to be raised under any statute of the State, is not unconstitutional.

2. Same—*acts of May 9, 1901, and May 10, 1901, do not prescribe limitation upon taxation.* The acts of May 10, 1901, (Laws of 1901, p. 271,) amending sections 117 and 128 of the Revenue act, and the act of May 9, 1901, concerning the levy and extension of taxes, (id. p. 272,) do not prescribe a limitation upon taxation.

3. Taxes—*when valuation as equalized by State board must be used.* Under the acts of May 10, 1901, and May 9, 1901, (Laws of 1901, pp. 271, 272,) where county, road and bridge, district, school and village taxes are all levied up to the limit imposed by law, it is the duty of the county clerk, in extending such taxes, to use the assessed valuation as equalized by the State board for the current year, and not the assessed valuation made by the county board of review.

4. Same—*failure to comply with statutory requirement vitiates tax.* Failure to substantially comply with the statutory requirements in exercising a grant of power to levy taxes is not a mere irregularity, but is a fatal omission which vitiates the tax.

5. Same—*county board must specify amount required for each purpose.* Under section 121 of the Revenue act, if the county tax is required for several purposes it is the duty of the county board, in its resolution levying the tax, to state the amount required for each purpose separately.

Appeal from the County Court of Adams county; the Hon. Charles B. McCrory, Judge, presiding.

At the June term, 1904, of the county court of Adams county the county collector made application for judgment and order of sale against appellant's property for delinquent tax for the year 1903. Appellant filed seventeen objections,

covering $473.55 of the county tax, $21.99 of the district
school tax, $8.62 of the tax of the village of Golden and
$277.90 of the road and bridge tax of the various townships.
The objections to these various amounts are, that they are
in excess of the maximum amount allowed by law; that the
statutes under which the valuations were made and equal-
ized are unconstitutional and void, and because the county
board, at its September session in 1903, did not determine
the amounts of all taxes to be raised for county purposes,
nor any or either of them, and did not state separately the
amounts to be raised for each purpose.

The objections were submitted to the court upon an
agreed state of facts, the material parts of which are as fol-
lows: (1) That appellant is the owner of certain railroad
property in said county, all of which was listed for taxation
for the year 1903; (2) that the county tax levy was made
at the rate of seventy-five cents on each $100 of valuation,
upon a total valuation of $12,445,418; (3) that this valua-
tion is the sum of the total valuation as fixed by the county
board of review, together with the total valuation of all rail-
road property and capital stock as fixed by the State Board
of Equalization; (4) that the total value of all of appellant's
property assessed for the year 1903 in the county, as fixed by
the State Board of Equalization, was $631,165; (5) that the
total county tax levied and assessed against appellant's prop-
erty, and for which judgment was asked, was the sum of
$4733.91, and that the assessment was levied at the rate of
seventy-five cents on each $100 of the said $631,165; (6)
that the total valuation of all property in said county as
equalized by the State Board of Equalization was $11,184,-
628, and that a tax of seventy-five cents on each $100 of this
valuation would produce the sum of $83,884.71; (7) that in
order to produce a tax aggregating the sum of $83,884.71
on the valuation aforesaid, of $12,445,418, as fixed by the
board of review, required a tax rate of sixty-seven and one-
half cents on each $100 of the aforesaid total valuation of

$12,445,418; (8) that the county tax of $4733.91 assessed against appellant's property exceeded the rate of sixty-seven and one-half cents on each $100 of valuation of the aforesaid total of $12,445,418, and that the amount of such excess is $473.55; (9) that the total amount of taxes for all purposes levied and assessed against appellant's property, and for which judgment was asked, was the sum of $22,-970.37, and that the sum last aforesaid included the county taxes, amounting to $4733.91; (10) that on April 29, 1904, appellant tendered to the county collector the sum of $22,-188.31, which was all the tax levied or assessed against its property except the sum of $473.55 of county tax, and except, also, the several amounts assessed for road and bridge taxes, district school taxes and village tax above enumerated, which tender was then and there refused by the county collector for the reason that it did not include all of the taxes assessed against the appellant, and that appellant has duly brought this sum into court as a tender.

In addition to this agreed state of facts the county clerk identified the order of the board of supervisors made at its September meeting, 1903, levying the tax for county purposes, and he also testified to various facts not necessary to be here recited. All of the objections were overruled and judgment and order of sale entered. From this judgment an appeal has been prosecuted to this court.

Joseph N. Carter, and Matthew F. Carrott, (Chester M. Dawes, of counsel,) for appellant:

The county tax levied by the board of supervisors at its September meeting, 1903, for county purposes, on appellant's property, was to the extent of $473.55 (the amount objected to) in excess of the maximum amount allowed by law, and said excess was and is therefore illegal, and it was manifest error in the county court to include the same in the judgment. Laws of 1901, p. 272; Const. 1870, art. 9, sec. 8; Rev. Stat. chap. 34, secs. 24, 27.

The act of May 10, 1901, amending sections 117 and 128 of the general Revenue law, and the act of May 9, 1901, prescribing the rule by which the maximum amount of any tax levied under any statute of the State can and must be determined, are *in pari materia* and must be construed together. So construed and as to give the intended effect to each there is no conflict between them, but they are in perfect harmony one with the other. Laws of 1901, pp. 271, 272; *South Park Comrs.* v. *Bank,* 177 Ill. 234; *Northern Trust Co.* v. *Palmer,* 171 id. 387; *Railway Co.* v. *Chicago,* 148 id. 516.

The levy of said county tax was wholly illegal and void, because it was not made in accordance with law but in direct violation of the statute. Rev. Stat. chap. 120, sec. 121; *Railway Co.* v. *People,* 205 Ill. 582; *Railway Co.* v. *People,* 207 id. 312; *People* v. *Railroad Co.* 194 id. 51; *People* v. *Railroad Co.* 193 id. 364; *People* v. *Glenn,* 207 id. 51.

James N. Sprigg, for appellee:

The appellant company's property is taxed only at the rate of seventy-five cents on each $100 valuation on original assessment by the State Board of Equalization. This much the constitution expressly authorizes. (Const. 1870, art. 9, sec. 8.) The statute also authorizes it in the same words. Rev. Stat. chap. 34, sec. 24, clause 6.

Senate Bill No. 214, commonly called the "Juhl Bill," (Laws of 1901, p. 272,) should be read side by side with section 49 of the new Revenue law of 1898. The Juhl Bill is an attempt to re-enact, substantially, said section 49, and is unconstitutional. *People* v. *Knopf,* 183 Ill. 418; *Knopf* v. *People,* 185 id. 25; *Devine* v. *Board of Comrs.* 84 id. 590.

Where the unconstitutional portion of a statute induced the passage of the remainder of the chapter, it invalidates the entire act. *State* v. *Poynter,* 81 N. W. Rep. 431; *In re Day,* 181 Ill. 74.

The law does not require a tax levy for "county purposes" to be itemized. *Mix* v. *People,* 72 Ill. 241.

"County purposes" means one purpose, viz., for payment of county charges, imposed by law upon a public corporation of authority specially limited to the powers granted and burdens imposed by law.

Mr. Justice Wilkin delivered the opinion of the court:

It is first insisted that the county tax as levied by the board of supervisors at its September meeting, 1903, was to the extent of $473.55,—the amount objected to,—in excess of the maximum allowed by law, and was to this extent illegal and void; that the same error was committed in regard to the road and bridge taxes, the school tax and the corporation tax of the village of Golden.

The levy for county purposes as made by the supervisors is as follows:

"By the Finance Committee.

*"To the Board of Supervisors:*

"Gentlemen:—We, your finance committee, in the exercise of the powers conferred by law on county boards for that purpose, find that the necessary expenditures of the county of Adams for the current year, in the discharge of the obligations imposed upon said county by law, will require a sum of money to be collected by general taxation equal to seventy-five cents on the $100 valuation of the taxable property of this county, and recommend the adoption of the following order: That there be and is hereby levied for the expenditures of the current year for county purposes, a tax of seventy-five cents on the $100 valuation, and at that rate upon all property within the county of Adams as shown by the assessed and equalized valuation thereof as assessed by the Adams county board of review, and upon all property within said county as originally valued and assessed by the State Board of Equalization for the year 1903 for the purpose of taxation, and that the county clerk be and is hereby instructed to extend the said rate of seventy-five cents on each $100 valuation in accordance with this order. Adopted."

This order of the county board directed the clerk to levy seventy-five cents, the highest rate allowed by law, on each $100 of the valuation made by the county board of review. It is insisted by the appellant that by extending seventy-five cents on $12,445,418, the valuation fixed by the board of review, a county tax of $93,340.63 was produced, and that

by levying such tax of seventy-five cents on the valuation of the State board, which amounted to $11,184,628, a county tax of only $83,884.71 would have been produced, and that this is the maximum amount of taxes for county purposes which could have been lawfully assessed, and was to the extent of $9455.93 in violation of the statute, and of this amount $473.55 was assessed against appellant's property. Each objection as to the road and bridge tax, district, school tax and village tax is based upon the same limitation. The question for determination therefore is, whether these taxes, being the maximum provided by law, should be extended upon the basis of assessment as made by the board of review or by the State Board of Equalization.

Section 8 of article 9 of the constitution provides: "County authorities shall never assess taxes, the aggregate of which shall exceed seventy-five cents per $100 valuation, except for the payment of indebtedness existing at the adoption of this constitution, unless authorized by a vote of the people of the county." It is not contended that there was any indebtedness in Adams county at the date of this levy which had existed at the adoption of the constitution, and therefore, under this provision, it is conceded that for county purposes the rate of taxation should not exceed seventy-five cents on the $100. Under this constitutional provision section 121 of chapter 120 was enacted, authorizing the county board, at its September session, to determine the amounts of all taxes to be raised for county purposes, the aggregate amount of which shall not exceed the rate of seventy-five cents on the $100 valuation of property, and order a levy made for that amount. There is nothing in the constitution which provides the method by which the assessment shall be made, and this is therefore left to the General Assembly to govern by proper laws.

On May 10, 1901, an act of the General Assembly was approved amending sections 117 and 128 of the general Revenue law, (Laws of 1901, p. 272,) as follows:

"Sec. 117. All rates for taxes, hereinafter provided for, shall be computed by the county clerk on the assessed valuation of property, as equalized and assessed by the State Board of Equalization for State purposes, and on the assessed valuation of property, as equalized and assessed by the county board of review, and all property assessed by the State Board of Equalization for other taxes.

"Sec. 128. State, county, town, road and bridge, village, city, district, school and all other taxes. All State taxes shall be extended by the respective county clerks upon the property in their counties upon the valuation produced by the equalization and assessment of property by the State Board of Equalization. All other taxes shall be extended upon the valuation produced by the equalization and assessment of property by the county board of review, and all property originally assessed by the State Board of Equalization. In the extension of taxes the fraction of a cent shall be extended as one cent."

There is nothing in either one of these sections which attempts to prescribe a limitation upon taxation. The limitations are provided by other sections of the statute and by the constitution. In view of the fact that there were two valuations established, it was necessary to fix a maximum amount which should not be exceeded.

May 9, 1901, an act concerning the levy and extension of taxes was approved, (Laws of 1901, p. 272,) as follows:

"Section 1. *Be it enacted by the people of the State of Illinois, represented in the General Assembly:* That in determining the amount of the maximum tax authorized to be levied by any statute of this State, the assessed valuation of the current year of the property in each taxing district, as equalized by the State Board of Equalization, shall be used. And if the amount of any tax certified to the county clerk for extension shall exceed the maximum allowed by law, determined as above provided, such excess shall be disregarded, and the residue only treated as the amount certified for extension.

"Sec. 2.   The county clerk in each county shall ascertain the rates per cent required to be extended upon the assessed valuation of the taxable property in the respective towns, townships, districts, incorporated cities and villages in his county, as equalized by the State Board of Equalization for the current year, to produce the several amounts certified for extension by the taxing authorities in said county, (as the same shall have been reduced as hereinbefore provided in all cases where the original amounts exceed the amount authorized by law.)"   *   *   *

By the above enactment it was evidently the intention of the General Assembly to designate which of the valuations should be the one upon which the seventy-five per cent limit should be estimated.   All of the taxes in question being up to the limit provided by law, it was the duty of the county clerk to extend them upon the equalized valuation made by the State board, and not upon the valuation as made by the board of review.   The amount of tax, in each case, in excess of the limit provided by law for county, road and bridge, district, school and village taxes estimated on the equalization of the State board was illegal and void, and the court should have sustained the objections of appellant.

We have in this connection given due consideration to the argument of counsel for appellee to the effect that the law referred to by counsel as the "Juhl law," approved May 9, 1901, is unconstitutional and void, and we are clearly of the opinion that the sections above quoted are not, in any view of the case, subject to the objection.   Whether or not the other parts of the act are unconstitutional we need not now determine, further than to hold that they are not so connected with sections 1 and 2, *supra,* as that the latter could not be maintained even though other parts of the act were held void.

It is next insisted that the entire levy for county purposes, as made by the board of supervisors at its September meeting, 1903, was illegal and void, first, because it undertook to

prescribe a rate,—and that, too, on the wrong valuation,—and did not certify any amount to the county clerk for extension; and second, because the board of supervisors did not state separately the amount of tax required for each county purpose.

Section 121 of the Revenue act is as follows: "The county board of the respective counties shall, annually, at the September session, determine the amounts of all taxes to be raised for county purposes, the aggregate amount of which shall not exceed the rate of seventy-five cents on the $100 valuation of property, except for payment of indebtedness existing at the adoption of the present State constitution, unless authorized by a vote of the people of the county. When for several purposes, the amount for each purpose shall be stated separately." (Hurd's Stat. 1903, p. 1529.)

The order of the county board levying this tax has been set out in full in the forepart of this opinion. The levy is made for the full limit as provided by law,—seventy-five cents on the $100 valuation,—and orders the county clerk to extend the taxes on the equalized assessment as made by the board of review. We have held in many cases that a grant of power to levy taxes must be strictly construed and that the methods prescribed by the legislature must be substantially followed, and that a failure to comply with statutory requirements is not a mere irregularity, but is a fatal omission, which vitiates the tax. *People* v. *Atchison, Topeka and Santa Fe Railway Co.* 201 Ill. 365; *Chicago and Alton Railroad Co.* v. *People,* 190 id. 20; *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *People,* 205 id. 582; *People* v. *Glenn,* 207 id. 50.

The section of the statute under which this tax was levied has never been before us for consideration, but many other statutes of similar import have been passed upon with reference to city and village taxes, school taxes, road and bridge taxes and township taxes, and we have uniformly held that where there were provisions of the statute requir-

ing the specific items for which a tax was levied to be stated in the levy, together with the amount of each, such provisions were mandatory and were necessary to a valid levy. (*Cincinnati, Indianapolis and Western Railway* v. *People,* 207 Ill. 566; *People* v. *Chicago and Alton Railroad Co.* 194 id. 51; *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *People, supra; People* v. *Glenn, supra; People* v. *Chicago and Alton Railroad Co.* 193 Ill. 364.) The provisions of the statute in question are substantially the same as similar statutes which have been construed, and to say that a levy made in gross amount for all county purposes was valid, would be equivalent to giving no effect to that provision of the statute requiring the amount for each purpose to be stated separately. It is not sufficient answer to say that the provision is useless and unwise. We have nothing to do with these questions. It is only for us to say whether the sections of the statute require the levy to be in separate items. This requirement gives the tax-payer an opportunity to know for what purpose taxes are being levied and collected, and gives him an opportunity, if necessary, to prevent unjust levy and assessment. Taxes raised for county purposes include many different things, and these various amounts and purposes can be ascertained by the county board the same as they are ascertained by other taxing bodies.

We do not think the levy as made for county purposes was in compliance with the statute, and the court committed error in refusing to sustain the objection. *Cincinnati, Indianapolis and Western Railway Co.* v. *People,* (*ante,* p. 197.)

The judgment of the county court will be reversed and the case remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*