# CASES

### ARGUED AND DETERMINED

#### IN THE

# SUPREME COURT OF ILLINOIS.

CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RY. CO.

*v.*

THE PEOPLE *ex rel.* O. L. McCord, County Treasurer.

*Opinion filed October 23, 1906.*

1. TAXES—*section 1 of Juhl law of 1901 construed.* Under section 1 of the act of 1901, (Laws of 1901, p. 272,) commonly known as the Juhl law, the maximum amount of county tax that may be levied without a vote of the people is to be ascertained by computing the tax at the rate of seventy-five cents on the $100 on the basis of the equalized value as fixed by the State Board of Equalization.

2. SAME—*taxes other than State should not be extended on the State board's valuation.* After the maximum amount of tax which may be levied under a maximum rate has been computed on the basis of the valuation by the State Board of Equalization, all taxes except the State tax should be extended upon valuation as fixed by the county board of review, together with the amount of corporate property originally assessed by the State Board of Equalization.

3. SAME—*section 1 of Juhl law does not apply if tax is less than maximum.* If the amount of taxes to be levied is less than the maximum amount allowed by law section 1 of the Juhl law of 1901 has no application, and the tax should be both computed and extended upon the valuation as fixed by the county board of review, together with the corporate property assessed by the State board.

223—2

4. Same—*highway commissioners are judges of the contingency authorizing additional road tax levy.* Under section 14 of the Road and Bridge act the commissioners of highways are the judges of the contingency authorizing an additional road and bridge tax levy, and if their certificate shows what the contingency is and the board of town auditors state that they are satisfied that such a contingency exists, a tax-payer cannot object that no contingency is shown.

Scott, C. J., and Carter, J., dissenting.

Appeal from the County Court of Vermilion county; the Hon. S. Murray Clark, Judge, presiding.

Rearick & Meeks, for appellant.

J. W. Keeslar, State's Attorney, (W. T. Gunn, and Swallow & Swallow, of counsel,) for appellee.

Mr. Justice Farmer delivered the opinion of the court:

This is an appeal from a judgment for taxes for the year 1904, entered by the county court of Vermilion county against the property of the Cairo, Vincennes and Chicago Railway Company and the Peoria and Eastern Railway Company, which railroads are the property of appellant under arrangements which make appellant liable for the taxes thereon. The excess of amount and kind of taxes involved is as follows: Cairo, Vincennes and Chicago railway—county tax, $34.89; town tax, town of Elwood, $36.34; road and bridge, town of Georgetown, $68.33; special gravel road, town of Elwood, $16.15. Peoria and Eastern railway—county tax, $72.10; road and bridge, town of Oakwood, $32.06. These amounts represent certain excesses which are claimed to be illegal, appellant having paid all other taxes.

The first point involves most of the items above mentioned, and raises the question as to whether the county clerk extended the taxes in question upon right valuation.

The record shows that the total valuation of the county as equalized by the county board of review and the corpo-

rate property that was assessed by the State Board of Equalization amounted to $16,964,118, and that the valuation as fixed by the State Board of Equalization for the county was $15,582,850. By sections 117 and 128 of the Revenue law (Laws of 1901, p. 272,) the State tax is to be extended on the valuation as fixed by the State Board of Equalization, and all other taxes are to be extended on the valuation produced by the equalization and assessment of property by the county board of review, and all property originally assessed by the State Board of Equalization. The county board made appropriations and a levy such as required seventy-five cents on the $100, which is the maximum tax authorized by the constitution and the statute to be levied by a county without a vote of the people. Under what is called by counsel the Juhl law, passed in May, 1901, (Laws of 1901, p. 272,) it is provided by section 1 "that in determining the amount of the maximum tax authorized to be levied by any statute of this State the assessed valuation of the current year of the property in each taxing district, as equalized by the State Board of Equalization, shall be used. And if the amount of any tax certified to the county clerk for extension shall exceed the maximum allowed by law, determined as above provided, such excess shall be disregarded, and the residue only treated as the amount certified for extension." As we interpret this statute, the maximum amount of county tax that may be levied without a vote of the people is to be ascertained by computing the tax at the rate of seventy-five cents on the $100 on the basis of the equalized value as fixed by the State Board of Equalization. By such computation we find that the maximum amount of tax that could be levied in Vermilion county for county purposes for the year 1904 was $116,871. Having, then, the maximum amount of tax that could be levied and collected for that year, and following the requirements of sections 117 and 128 of the Revenue law, *supra,* the rate percentum against each $100 as equalized by the county board of re-

view and the property originally assessed by the State Board of Equalization is ascertained by dividing the maximum amount of money that could be raised, by $16,964,118, which gives the rate of sixty-nine cents on the $100.

The testimony shows that the clerk, in extending the tax, not only computed it, but extended it upon the valuation as fixed by the State Board of Equalization for the county and local purposes, contrary to the provision of the statute; and while it raised no more tax than the amount authorized to be raised by law, because taking the maximum amount that was authorized to be raised and finding the per cent upon the basis of the equalization as fixed by the county board of review, together with the corporate property as assessed by the said board of review, would give a per cent to raise the identical amount, yet the difficulty is that lands in the county were reduced more than a million dollars by the State Board of Equalization, and by extending the tax against the assessment fixed by the State Board of Equalization appellant was required to pay more than its proportionate share of the tax. The valuation of appellant's property for taxable purposes was the same whether the tax was extended against the valuation fixed by the State Board of Equalization or that fixed by the county board of review, while the valuation of the rest of the taxable property of the county as determined by the State Board of Equalization was $1,381,268 less than the valuation fixed by the board of review. It will thus be seen that appellant was taxed seventy-five cents on the $100 of the proper valuation of its property while other property was taxed only sixty-nine cents on the $100.

It is to be noted that while the statute requires that the assessment as fixed by the State Board of Equalization shall be taken as the basis of calculation in determining the maximum amount of tax that may be levied under a maximum rate, the statute expressly provides that all the taxes except the State taxes shall be extended upon the valuation as fixed

by the county board of review and the corporate property assessed by the State Board of Equalization. Section 1 of the Juhl law would have no application in ordinary cases where the tax levied was not up to the maximum amount allowed by law, as that section seems to be solely for the purpose of limiting the amount of maximum tax in any given case; and if the taxes to be levied were to be less than the maximum amount allowed by law, it would be computed and extended upon the valuation as fixed by the county board of review of the general property and the corporate property as assessed by the State Board of Equalization. This act has been considered and construed in *Chicago, Burlington and Quincy Railway Co.* v. *People,* 213 Ill. 458, and *Wabash Railroad Co.* v. *People,* 214 id. 568, and need not now be further discussed. The evidence shows that as the same method of extending the tax was observed in all the local taxes in the county,—that is, that they were all extended against the valuation as fixed by the State Board of Equalization,—the same defect or excess was proportionately charged against the property of appellant in all of such taxes.

The objections thus urged are shown by the record to apply to the following taxes of the Cairo, Vincennes and Chicago Railway Company: County tax, $34.89; town tax, town of Elwood, $36.34; and to the following taxes of the Peoria and Eastern Railway Company: County tax, $72.10; road and bridge tax, town of Oakwood, $32.06. A determination of the objection made to the road and bridge tax of the town of Georgetown and the special gravel road tax of the town of Elwood would necessitate a considerable amount of mathematical calculation, which would in part have to be based on assumptions that either do not appear at all from the record or are so vague and indefinite as to be very doubtful and uncertain.

A special objection is made to the road and bridge tax of the town of Georgetown. There an additional levy of

twenty cents on the $100 is claimed was illegal for the reason that no contingency was shown authorizing said additional levy. The commissioners of highways of Georgetown certified to the board of town auditors and assessor that "in our opinion a greater levy than sixty cents on the $100 is needed in view of the contingency that there are outstanding contracts for the building of bridges and the building of grades and approaches to bridges erected and the graveling of highways in said township, the said sixty cents on the $100 being inadequate to meet said contingencies. We therefore ask that you give your consent, in writing, to an additional levy of twenty cents on the $100 on the taxable property of the said town." The record of the board of town auditors and assessor shows the following: "And it having been certified to us, the undersigned board of town auditors and assessor in and for the township of Georgetown, in the county of Vermilion and State of Illinois, by the commissioners of highways in and for said township, that in their opinion a greater levy than sixty cents on the $100 is needed in view of the contingency that there are outstanding contracts for the building of bridges and the building of grades and approaches to bridges and the graveling of highways in said township, and the said board of town auditors and assessor being satisfied that the said contingency exists and the additional levy of twenty cents on the $100 of taxable property of said town is needed to meet said contingency, now, therefore, we hereby give our consent in writing to the said commissioners to make an additional levy of twenty cents on the $100 of the taxable property of the said township of Georgetown."

The language of the statute (section 14 of the Road and Bridge act) is as follows: "If, in the opinion of the commissioners, a greater levy is needed in view of some contingency, they may certify the same to the board of town auditors and assessor," etc. Under this section the commissioners of highways are made the judges of the con-

tingency. In this case they went as far as the statute requires, and their certificate shows several contingencies, and the board of town auditors stated that they were satisfied that the contingencies existed. We are of opinion there was a substantial compliance with the statute and authorized the increased levy. The case of *People v. Cincinnati, Indianapolis and Western Railway Co.* 213 Ill. 503, cited by appellant, does not sustain its position. In that case they attempted by their certificate to levy one hundred cents "for road and bridge purposes and for the payment of outstanding orders drawn on the township treasurer." The additional levy asked for was for the same purpose as the sixty cents, and there was no certificate that any contingency had arisen or any necessity existed for the additional levy.

The judgment of the county court as to the special gravel road tax of the town of Elwood and the road and bridge tax of the town of Georgetown, both extended against the Cairo, Vincennes and Chicago Railway Company, will be affirmed. And as to the county tax and town tax of the town of Elwood assessed against the said Cairo, Vincennes and Chicago Railway Company, and the county tax and the road and bridge tax of the town of Oakwood assessed against the Peoria and Eastern Railway Company, the judgment of the county court will be reversed. Appellant will be required to pay one-fourth of the costs of this appeal.

*Affirmed in part and reversed in part.*

Scott, C. J., and Carter, J., dissenting:

The assessed valuation of property for the county of Vermilion, as equalized and assessed by the State Board of Equalization for the year 1904, which will hereinafter be referred to as the "State value," was less than the assessed valuation of the property in that county as fixed by the board of review of the county, including the assessed value of the property which was originally assessed by the State Board of Equalization. The assessed value so fixed by the county board of review and by the original assessments

made by the State Board of Equalization will hereinafter be referred to as the "county value."

Objection is made to a part of the county and certain other local taxes which were extended at the highest rate or percentage permitted by law on the State value. It is conceded that the total amount of such taxes extended against all the property taxed is not greater than it should be, but it is argued that these taxes should have been computed on the county value and extended on that value at such a rate as would produce the same amount of taxes that was extended on the State value, which would result in appellant paying a smaller amount and a lesser proportion of the taxes than were extended against it by the method which the county clerk pursued.

The rates, which were extended at the highest percentage permitted by law, were extended upon the valuation of the property of the appellant as fixed by the State Board of Equalization, and the valuation of the property of appellant is the same whether the State value be taken or the county value be taken. In Vermilion county, in 1904, the total county value was $16,964,118 and the total State value was $15,582,850. Appellant reaches the conclusion that the rate is excessive as to its property in the following manner, to quote from its argument in reference to the county tax:

"The county tax was levied to the full limit, viz., seventy-five cents on the $100 on the value of all property as equalized by the State board. The aggregate county tax for the year, therefore, was $116,871. This was the highest amount that the county board for that year was authorized to levy. If this amount was spread on all property according to the State value the rate is seventy-five cents; if the same amount of tax is spread upon the county value the rate is sixty-nine cents, making a difference of six cents on each $100 of property. The value of the Cairo, Vincennes and Chicago property in the county was $58,155. Six per cent excess on this amount of property would equal

$34.89 of taxes, which is the excess complained of. The value of the property of the Peoria and Eastern railway in the county, as shown by the record, is $120,163, and six per cent of this would equal $72.10, which is the excess tax complained of."

On this basis, the highest rate that could be extended against appellant's property for county taxes upon the State value, its only valuation, would be sixty-nine cents on the $100 instead of seventy-five cents on the $100, and if this contention is correct, the act approved May 10, 1901, hereinafter set out, becomes a limitation upon the rate of taxation,—a result which we believe was not contemplated by the legislature. Appellant's reasoning as to each of the other taxes which it claims to be excessive is the same.

We are of opinion that it has no just cause for complaint in this regard, and that as long as the amount of the county tax extended against it does not exceed an amount produced by extending the highest rate (seventy five cents on the $100) permitted by law upon the value of its property as fixed by the State Board of Equalization, the tax is unobjectionable, and that all taxes of every character should be extended upon the State valuation.

In determining the question presented by this objection a somewhat lengthy consideration of various statutory and constitutional provisions has been found necessary.

All property which is taxable is originally assessed by the local assessor, excepting that which is originally assessed by the State Board of Equalization. The assessment made by the local assessors is subject to review, modification and equalization by the board of review of the county, (Hurd's Stat. 1903, chap. 120, sec. 329,) and the value of that property as fixed by that board, added to the original assessment of such property as was originally assessed by the State Board of Equalization, makes the county value.

When the board of review has completed its work the county clerk is required to transmit to the Auditor an ab-

stract of the assessment. (Section 341 of chapter 120, *supra.*)
The Auditor presents these statements from the various
counties of the State to the State Board of Equalization, and
that board may so lower or raise the total assessed value of
property in any county, as returned by the county clerk, as
shall make the property in such county bear a just relation to
the assessed value of property in other counties of the State,
(section 345 of chapter 120, *supra,*) the total amount of the
increase or decrease not to exceed ten per cent of the assessed
value of all the property in the State.

It is to be observed that the value which the State board
may raise or lower is "the total assessed value of property
in any county as returned by the county clerk." The values
which it equalizes are the values which have been fixed by
the local assessing officers. Jurisdiction to make original as-
sessments as to property of certain classes is conferred upon
that board by sections 108 and 109 of chapter 120, *supra.*
Such original assessments are certified by the Auditor to the
various county clerks, and the clerks are directed to extend
taxes for all purposes on the respective amounts so certified
the same as against other property in the various taxing dis-
tricts. When the Board of Equalization has once made an
assessment, that assessment, without change, alteration or
equalization, is certified to the various clerks, and the taxes,
as to that property, must be extended upon the assessment as
originally made by the State Board of Equalization. The
only assessments which that board equalizes are those made
by the local assessors. Consequently, the assessed value of
such property as is assessed by the State board is the same
whether the county value or the State value be taken.

It must be presumed that the assessed value fixed by the
State board, upon the property originally assessed by it, bears
the same relation to the actual value of that property, as the
assessed value, as equalized by the State board, bears to the
actual value of property originally assessed by the local
assessors.

The Revenue act of 1872 provided, by two sections thereof, (Hurd's Stat. 1899, chap. 120, secs. 117, 128,) as follows:

"Sec. 117. All rates for taxes, hereinafter provided for, shall be extended by the county clerk on the assessed valuation of property, as equalized and assessed by the State Board of Equalization.

"Sec. 128. All State and county taxes shall be extended by the respective county clerks upon the property in their counties, upon the valuation produced by the equalization and assessment of property by the State Board of Equalization. Town, district, village, city and other taxes, shall also be extended against such assessed and equalized valuation of property within their respective jurisdictions. In the extension of taxes, the fraction of a cent shall be extended as one cent."

By an act of the legislature, approved May 10, 1901, said sections were amended to read as follows (Laws of 1901, secs. 117, 128, p. 272):

"Sec. 117. All rates for taxes, hereinafter provided for, shall be computed by the county clerk on the assessed valuation of property, as equalized and assessed by the State Board of Equalization for State purposes, and on the assessed valuation of property, as equalized and assessed by the county board of review, and all property assessed by the State Board of Equalization for other taxes.

"Sec. 128. State, county, town, road and bridge, village, city, district, school and all other taxes.] All State taxes shall be extended by the respective county clerks upon the property in their counties upon the valuation produced by the equalization and assessment of property by the State Board of Equalization. All other taxes shall be extended upon the valuation produced by the equalization and assessment of property by the county board of review, and all property originally assessed by the State Board of Equalization. In the extension of taxes the fraction of a cent shall be extended as one cent."

The effect of this amendatory act, if valid, is to require the computation and extension of the State tax upon the State value and the computation and extension of all other taxes upon the county value.

On May 9, 1901, an act of the legislature was approved, which was in part as follows (Laws of 1901, secs. 1, 2, p. 272) :

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That in determining the amount of the maximum tax authorized to be levied by any statute of this State the assessed valuation of the current year of the property in each taxing district, as equalized by the State Board of Equalization, shall be used. And if the amount of any tax certified to the county clerk for extension shall exceed the maximum allowed by law, determined as above provided, such excess shall be disregarded, and the residue only treated as the amount certified for extension.

"Sec. 2. The county clerk in each county shall ascertain the rates per cent required to be extended upon the assessed valuation of the taxable property in the respective towns, townships, districts, incorporated cities and villages in his county, as equalized by the State Board of Equalization for the current year, to produce the several amounts certified for extension by the taxing authorities in said county."

Appellant's position is that the maximum amount of tax must be determined under the provisions of section 1 of the act approved May 9, 1901, and then that the rate of taxation for all taxes, other than State taxes, must be determined by dividing that maximum by the county value, where the amount levied equals or exceeds that maximum, and then that all such taxes, other than State taxes, shall be extended upon the county value.

The following is an example which will perhaps better illustrate appellant's contention: In a certain county the value of the property originally assessed by the local officers

is finally fixed by the board of review at $10,000,000, and the value of other taxable property in that county as originally assessed by the State Board of Equalization is $1,000,-000, making the county value $11,000,000. The State Board of Equalization, in equalizing the assessment of this county, reduces the assessed value of the property assessed by the local officers ten per cent, fixing it at $9,000,000. The assessment made by the State board continues the same, $1,000,000, making the State value for the county $10,000,-000. There is no question but that the State taxes must be extended upon the State value. If that is done, the property originally assessed by the State board will bear one-tenth of the State tax, as it should do, and the property originally assessed by the local officers will bear nine-tenths of the State tax, as it should do; but if the local taxes be extended upon the county value, then the property originally assessed by the State board, while it is one-tenth in value of the taxable property, will bear but one-eleventh of the local taxes, and the property originally assessed by the local officers, though but nine-tenths in value of the taxable property, will bear ten-elevenths of the local taxes. It is manifest that this causes property originally assessed by the State board to bear less than its proportion of local taxation, and causes property originally assessed by the local assessors to bear more than its proportion of such taxation, and similar injustice will obtain, no matter at what rate the local taxes are extended, whether at the maximum or less; so long as they are extended upon the county value. If, on the other hand, the State board, in equalizing assessments, had increased the assessment made by the local assessors, and the local taxes were thereafter extended upon the county value, property originally assessed by the State board would bear too great and property assessed by the local authorities would bear too small a proportion of local taxation.

Proceeding now under the act approved May 9, 1901, appellant would ascertain the maximum amount of county

tax by computing seventy-five cents on each $100 of $10,-000,000, the State value, which gives $75,000. Then appellant proceeds under section 117, *supra,* as amended, for the purpose of fixing the rate at which this amount shall be extended upon the county value. Dividing $75,000 by $11,-000,000, the county value, appellant would obtain a rate of sixty-eight cents plus for the rate for the county tax, which it contends is the highest rate at which county taxes can be extended upon the assessed valuation of that property which was originally assessed by the State board, notwithstanding the fact that both the constitution and the statute authorize the extension of county taxes at as high a rate as seventy-five cents on each $100 of the assessed value of all property taxed.

Appellant's position results, in such cases as the one used for illustration and in cases such as the one at bar, not only in property originally assessed by the State board paying less than its just proportion of the local taxes, but results in reducing the maximum of the legal rate or percentage at which local taxes may be extended against such property, and results also in the property of each property owner bearing one proportion of the State tax and a different proportion of all other taxes.

Section 1 of article 9 of the constitution of 1870 provides: "The General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise." * * *

Section 9 of the same article, after providing that the General Assembly may confer power to make local improvements by special assessment or special taxation, continues: "For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect

taxes; but such taxes shall be uniform in respect to persons and property, within the jurisdiction of the body imposing the same."

It is clear that a statute which leads to property constituting one-tenth, according to the assessed value, as fixed by the State board, of the taxable property within a county paying but one-eleventh or any other proportion less than one-tenth of the local taxes in that county, contravenes the two sections of the constitution from which we have above quoted, and that the statute authorizing the result reached by the majority of the court in this case, whereby the property of each individual owner is made to pay one proportion of the State tax and a different proportion of all other taxes, is in violation of constitutional provisions directing that taxation shall be in proportion to the value of the property taxed. The same property should pay the same proportion of each tax—not one proportion of one tax and a different proportion of another tax.

We are of opinion that the act approved May 10, 1901, found at pages 271 and 272 of the Session Laws of 1901, and entitled "An act to amend section one hundred and seventeen (117) and one hundred and twenty-eight (128) of 'An act for the assessment of property and for the levy and collection of taxes,' approved March 30, 1872, in force July 1, 1872," is unconstitutional and void, and that sections 117 and 128 of the Revenue act, approved March 30, 1872, as originally enacted, are in nowise modified, amended or repealed by said act approved May 10, 1901, and that the rates for all taxes should be computed upon the State value, and that all taxes should be extended upon the State value.

The conclusion reached by the majority of the court is based upon the case of *Chicago, Burlington and Quincy Railroad Co.* v. *People,* 213 Ill. 458, and the case of *Wabash Railroad Co.* v. *People,* 214 id. 568, which latter case is said in the opinion therein to turn upon the former. No discussion of the constitutionality of the statute approved May 10,

o

1901, is found in either of these cases, and in the case in the 213th it is said, at page 465, rightfully, as we think, that "all of the taxes in question being up to the limit provided by law, it was the duty of the county clerk to extend them upon the equalized valuation made by the State board, and not upon the valuation as made by the board of review." Under these circumstances we do not think the two cases just cited should lead to the conclusion here reached by the majority of the court, to the effect that the taxes in the present case, "being up to the limit provided by law," should be extended, not "upon the equalized valuation made by the State board," but "upon the valuation as made by the board of review," especially as that conclusion will plainly and manifestly result in all property assessed by the State board escaping its just proportion of taxes other than State taxes in every instance where the State board reduces the assessed value of the property assessed by the local assessor.

We deem the judgment of the county court correct.