THE PEOPLE *ex rel.* J. M. Krebs, County Collector, Appellee, *vs.* THE JACKSONVILLE AND ST. LOUIS RAILWAY COMPANY, Appellant.

*Opinion filed December 16, 1914.*

1. TAXES—*the methods of providing funds for State aid roads specified in section 22 of act of 1913 are not exclusive.* The methods of providing funds by a county for State aid roads, as specified in section 22 of the Roads and Bridges act of 1913, are not exclusive, and the county board has power, under its general authority to levy taxes for county purposes, to levy a tax to raise the funds for State aid roads.

2. SAME—*purpose of section 22 of Roads and Bridges act of 1913.* Section 22 of the Roads and Bridges act of 1913, instead of being intended to confer power upon county boards to levy taxes to raise funds to aid in constructing State aid roads, was designed to point out the manner in which the county funds might be appropriated for State aid roads and become a separate fund, as provided in section 23 of such act.

3. SAME—*the county board may levy tax for State aid roads though no final allotment has been made.* The authority of the county board to levy a tax to raise money for State aid roads under its general powers of taxation is not dependent upon the question whether or not there has been a final allotment by the State highway commission of the county's portion of the State funds.

4. SAME—*road district tax levied as a tax on land after July 1, 1913, is invalid.* A road district tax attempted to be levied as a tax against land on the overseer's delinquent list after the repeal by the act of 1913 of the law authorizing such levy is invalid, as the repeal of the law put an end to the power to levy the tax.

5. SAME—*when road and ditch damage tax is excessive.* Under the statute no tax can be levied as a road and ditch damage tax until the amount of damages has been agreed upon, and a levy of such a tax for more than the amount so agreed upon is illegal and void as to the extent of the excess.

CARTWRIGHT, C. J., dissenting.

APPEAL from the County Court of Clinton county; the Hon. JAMES ALLEN, Judge, presiding.

BUNDY & WHAM, and NOLEMAN & SMITH, (J. A. CONNELL, of counsel,) for appellant.

HUGH V. MURRAY, State's Attorney, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is an appeal by the appellant, the Jacksonville and St. Louis Railway Company, from a judgment and order of sale entered in the county court of Clinton county against its railroad property and rolling stock for delinquent taxes for the year 1913. Upon application being made by the county collector for judgment and order of sale appellant appeared and filed a number of objections, which were sustained except the objections to the following taxes: County tax for State aid roads, amounting to $179.11; district road tax for East Fork and Meridian townships, amounting to $229.56, and road and ditch damage tax of Breese township, amounting to $13.34, all of which were overruled and judgment and order of sale entered against the appellant's property for the amount of these respective taxes. To reverse that judgment this appeal has been prosecuted.

The facts in the case are stipulated, from which it appears that on September 13, 1913, there was $19,700.87 in the county treasury not otherwise appropriated; that at the September meeting, 1913, the county board of Clinton county made its regular annual tax levy for the ensuing year, including therein an item of $6100 for county tax for State aid roads. No resolution was passed or steps taken to submit the proposition to a vote of the people. At this time the county board had received notice of the provisional allotment by the State highway commission of $6088 to Clinton county for State aid roads, and the county board made the above appropriation and levied the tax in question to raise its portion of the funds to be used for that purpose. At this time the State highway commission had sent no certificate of allotment of the State aid roads funds to the county of Clinton, and did not send such certificate until February 5, 1914. September 10, 1913, the day after the appropriation and tax levy were made, the county board

passed a resolution designating certain public highways for
State aid roads and forwarded a copy of the same to the
State highway commission on September 14, 1913. The
roads selected did not meet with the approval of the State
highway commission, and at a special meeting of the county
board held on January 7, 1914, a new map was made des-
ignating roads in the county and forwarded to the State
highway commission. At the March, 1914, meeting of the
county board a resolution was adopted stating that the pub-
lic interest demanded the improvement of certain highways
set forth therein, and a copy of the same was forwarded
to the State highway commission on March 12, 1914. On
June 24, 1914, the State highway commission approved the
selection of the roads designated in this resolution as State
aid roads. In the meantime, on September 11, 1913, the
county clerk had notified the State highway commission that
the county board had levied a tax to raise funds to pay
its portion of the cost of the construction of such State
aid roads.

Appellant insists that the county board had no power,
under its general taxing powers, to levy a tax to raise funds
to meet its portion of the cost of the State aid roads, and
that the same can only be raised by the issuance of bonds
after a vote of the people, as provided in section 22 of the
act of June 27, 1913; (Hurd's Stat. 1913, p. 2117;) and
that the tax in question is illegal and void for the further
reason that the same was levied before any roads had been
selected and designated in the county as State aid roads and
a certificate of allotment made by the State highway com-
mission, as provided by that act. Appellant also insists that
a county can exercise only such powers as are expressly
or impliedly granted to it and as are necessary and essen-
tial to carry out its declared objects and purpose; that the
act of June 27, 1913, created a new purpose for which the
county might raise funds, and that section 22 of the act
provides the method by which such funds may be appropri-

ated by the county for that purpose, and that under the holdings of this court in *Chicago, Burlington and Quincy Railroad Co.* v. *People,* 213 Ill. 458, *People* v. *Chicago and Illinois Midland Railway Co.* 260 id. 624, and other cases, the method pointed out in section 22 is exclusive, and must be strictly complied with or the tax levied will be illegal and void.

Section 22 of the Road and Bridge law provides as follows: "At any regular or special meeting of the county board held after notice of the decision of the State highway commission to authorize the construction of the proposed improvement as aforesaid, the county board shall determine whether it will authorize the proceedings necessary to enable the county to contribute the one-half of the cost required for the construction of State aid roads as provided in this act. When a county board has once adopted a final resolution providing for the construction or improvement of a highway or a section thereof in accordance with such plans and specifications, no resolution thereafter adopted by such board shall rescind or annul such prior resolution, either directly or indirectly, excepting under the advice and with the consent of the State highway commission. In case the county board desires that such provision be made for the construction of a State aid road, it may proceed in either of the methods following:

"(1) In case there be sufficient funds in the county treasury available therefor, the county board may appropriate therefrom sufficient to meet one-half the cost of the improvement.

"(2) If the county board so desires and deems it necessary for the purpose of the improvement herein authorized, the said county board, in the manner now provided by law for issuing bonds for county purposes, may submit to the legal voters of their county the question of issuing such county bonds. In such case the votes in favor of the proposition submitted shall be 'For County Bonds for State Aid

Roads,' and those against shall be 'Against County Bonds for State Aid Roads.' "

There can be no question but that where the legislature grants the power to levy a tax for a particular purpose and prescribes the conditions under which and the method by which the tax is to be levied, the provisions of the statute must be substantially complied with or the tax levied will be illegal and void, as held in the above cases. Section 22, however, does not confer any additional powers upon the county board with respect to its powers of taxation. On the contrary, it merely points out the manner in which the county board may appropriate county funds for the purpose of and to receive the benefits of that act. Section 22 should be read in connection with the preceding sections 16 to 21, inclusive, which deal with the manner of selecting and designating State aid roads. When so read it will be seen that it does not contemplate any action by the county board until after all of the provisions of the other sections have been complied with,—that is, until after the road has been selected and its desirability, importance and public utility passed upon by the State highway commission, a survey made, and plans and specifications and an estimate of the cost of the proposed improvement made by the State highway engineer and approved by the State highway commission. Then it is that the funds of the county may be appropriated to this purpose, viz., from money on hand raised by general taxation or money raised by issuing bonds for that purpose pursuant to a vote of the legal voters of the county, in the manner provided for issuing bonds for county purposes. By sections 25 and 56 of chapter 34, entitled "Counties," ample power is conferred upon the county board to raise funds for this purpose by general taxation. (Hurd's Stat. 1913, pp. 637, 643.) By clause 6 of section 25 it is provided that the county board shall have power "to cause to be annually levied and collected taxes for county purposes, including all purposes for which money

may be raised by the county by taxation, not exceeding seventy-five cents on the $100 valuation, and in addition thereto an annual tax not exceeding one hundred cents on the $100 for the purpose of paying the interest and principal of indebtedness which existed at the time of the adoption of the constitution." By section 56 of the same act it is further provided: "Said board shall have power to appropriate funds to aid in the construction of roads and bridges in any part of the county, whenever a majority of the whole board of the county may deem it proper and expedient." In *People* v. *Wabash Railroad Co.* (*ante*, p. 530,) we held that under this section county boards have power to aid in the construction of roads. It necessarily follows that a purpose for which the county may appropriate funds is one for which it may properly raise funds by general taxation to meet the expense incurred by such appropriation.

It will thus be seen that, wholly independent of the provisions of section 22 of the act of June 27, 1913, the county board has full power and authority to levy taxes by general taxation for the purpose of aiding in road construction in any part of the county. In our judgment section 22, instead of conferring upon county boards the power to levy taxes to raise funds to aid in road construction, was designed to point out the manner in which the county funds might be appropriated for State aid roads created by that act and become a separate fund, as provided in section 23 of the act. To give to the provisions of this section any other construction would render the first method pointed out by that statute practically nugatory and meaningless, as at the time the act took effect it could not have been contemplated by the legislature that there would be funds in the county treasury available for this purpose. Such a construction is not favored. In construing statutes the cardinal rule is to give effect to the intention of the legislature in adopting the act, and to give its essential provisions such a construction as will render no word, clause or sen-

tence superfluous or meaningless. *Crozer* v. *People,* 206 Ill. 464; *People* v. *Kipley,* 171 id. 44.

Our views in this respect are further strengthened by a consideration of the other provisions of this act and the objects and purposes sought to be accomplished by it. By section 15*b* it is provided that if any county shall fail to provide an appropriation of an amount equal to the State allotment within six months from the date of such allotment the amount so allotted shall be forfeited; and by section 15*c* it is further provided that it shall be deemed a sufficient acceptance of the allotment if the county board shall give notice to the State highway commission that it has assessed a tax to raise its portion of the cost, or that it has passed an order submitting to a vote of the people the question of raising an additional tax for this purpose, or that it has passed an order submitting to a vote of the people the question of issuing bonds for that purpose. It does not seem that the legislature would have provided that the county might signify its acceptance of the allotment in the first two ways pointed out, viz., by levying a tax to raise its portion of the cost or by submitting the question of raising an additional tax for that purpose to a vote of the people, if the only way in which the county could raise funds for this purpose was by issuing bonds pursuant to a vote of the legal voters of the county, as provided in section 22. It would be useless for the county to signify its acceptance of the allotment by levying a tax to raise its portion of the costs, if, when the tax was levied, it would be wholly illegal and void for want of power in the county board to levy a tax for that purpose and could not be collected, and we believe the legislature did not intend to so provide. A consideration of the various provisions of the whole act clearly indicates that it was the understanding of the legislature that the county board had the power to raise funds to aid in road construction by virtue of the provisions of sections 25 and 56 of chapter 34, *supra,* and that

its powers in this respect were to be referred to the authority conferred by those sections and not to the provisions of section 22 of the present act. It is therefore wholly immaterial, so far as the validity of the tax is concerned, that at the time the same was levied no final allotment of a portion of the State funds had been made by the State highway commission to the county and that no particular road or roads in the county had been selected and designated as State aid roads. If no such allotment was made and no road or roads selected or designated as State aid roads, the county board still had the power, under the authority conferred by section 56, to appropriate the funds so raised to the aid of road construction in any part of the county that it deemed proper and expedient, so long as the same was not raised as an additional tax for that purpose by a vote of the people or by the issuance of bonds for that purpose. A tax levied for State aid roads is a tax levied "to aid in the construction of roads" in the county, and such a levy is fully authorized by the provisions of sections 25 and 56, *supra.* The objection to this tax was properly overruled.

As to the road tax of East Fork and Meridian townships, these townships prior to July 1, 1913, were operating under what is known as the labor system. At the September meeting, 1913, of the county board the delinquent list of the road district tax from each of the townships was laid before the board and the same was ordered extended as a delinquent road tax against the personal and railroad property of appellant in the county. At the time this action was taken by the county board the act of June 23, 1883, had been repealed by the act of June 27, 1913. (Hurd's Stat. 1913, chap. 121, sec. 169.) The labor tax levied by section 83 of the act of June 23, 1883, did not become a lien on the property of appellant until after the return of the tax delinquent by the overseer to the supervisors, as provided in section 110 of that act, and the laying of the same before the board of supervisors and the

ordering of the same collected by the board of supervisors
at their September meeting, as provided by sections 116
and 117 of the act. (Hurd's Stat. 1911, p. 2014; *People .
v. Chicago and Illinois Midland Railway Co. supra.*) In
the latter case it is said: "It is true that the commission-
ers of highways determine how much money shall be raised
and make out the list, but the tax can be paid in labor un-
der the direction of the overseer of highways, and it never
becomes a tax against property until the list is delivered by
the overseer to the supervisors, sworn to as provided by the
statute, and the board of supervisors causes the tax to be
levied on the lands returned. Although the rate is fixed by
the commissioners, no tax upon lands is levied until the
board of supervisors makes the levy, which by the statute
must be based on a return of an overseer, sworn to by
him. The taxes which are delinquent are those which re-
main unpaid after demand or notice by an officer having
authority to collect them, and by the statute the taxes
against lands are to be levied by the board of supervisors
against the property shown by the list and affidavit of the
overseer to be delinquent. (*People* v. *Chicago and Eastern
Illinois Railroad Co.* 214 Ill. 190.) Where the law pre-
scribes a certain method to be adopted to subject property
to the burden of taxation, that method must be substantially
complied with before the property can be taken and sold
in satisfaction of a tax. Accordingly it was held that if
a delinquent list has not been delivered to the town super-
visor or placed before the board of supervisors by him
or any other person the proceedings cannot culminate in
a tax on property." At the time of the meeting of the
board of supervisors at which this tax was ordered collected
the law authorizing its collection had been repealed, and the
same was not levied in accordance with the provisions of
the law then in force. In *People* v. *Toledo, St. Louis and
Western Railroad Co.* 249 Ill. 175, we held that the repeal
of a tax law put an end to all power to levy a tax, even

in cases already commenced, and that a tax levied under such a law and not in accordance with the law then in force could not be collected. That is precisely the situation here, and the cases of *People* v. *Toledo, St. Louis and Western Railroad Co. supra, People* v. *Illinois Central Railroad Co. (ante,* p. 429,) and *People* v. *Chicago, Indiana and Southern Railroad Co. (ante,* p. 528,) are decisive of this question. The objection should have been sustained.

As to the road and ditch damage tax in Breese township, the stipulation shows that the total amount of the tax certified to by the commissioners for this purpose was $1200, and that up to February 12, 1913, the total amount of damages agreed upon was as follows: Adelheit and Elizabeth Voss $200; Henry and Theodore Hartland $900; total, $1100; and that there had been subscribed by popular subscription, for the purpose of inducing the laying out of the road, the sum of $200. Appellant's amount of this tax is $13.34. Appellant contends that the amount realized from the popular subscription should be applied to reduce the amount necessary to be raised by taxation to pay the damages agreed upon, and that the levy was excessive to the amount of $300. With this contention we do not agree. There may have been other expenses incurred in connection with the opening and laying out of the road, such as grading, removing fences, etc., besides the damages awarded to the land owners, and so far as this record shows the $200 raised by popular subscription may have been subscribed for paying such other expenses. The act of the highway commissioners in levying a tax for more than the full amount of the damages agreed upon would indicate that such was the fact. In the absence of a contrary showing every presumption is to be indulged in favor of the legality of the acts of the tax-levying authorities. (16 Cyc. 1076; *Peoria, Decatur and Evansville Railway Co.* v. *People,* 116 Ill. 401; *Chicago and Northwestern Railway Co.* v. *People,* 174 id. 80; *People* v. *Keener,* 194 id. 16.) Under sections 13 and

15 of the Road and Bridge act (Hurd's Stat. 1911, p. 1995,) no tax can be levied as a road damage tax until the amount of damages has been agreed upon. (*People* v. *Cairo, Vincennes and Chicago Railway Co.* 252 Ill. 395; *People* v. *Chicago, Burlington and Quincy Railroad Co.* 252 id. 482.) When the damages have been agreed upon, as required by that act, the amount is made certain, and the levy of a tax for more than the amount so agreed upon is excessive to the amount over and above the actual amount of damages agreed upon and to that extent is illegal and void. The objection should have been sustained as to the portion of the tax levied on appellant's property in excess of the amount of the $1100 damages agreed upon.

For the reasons given the judgment must be reversed and the cause remanded, with directions to the county court to sustain the objection as to the road tax in East Fork and Meridian townships and as to that portion of the road damage tax in Breese township levied in excess of $1100. In all other respects the judgment of the county court will be affirmed.          *Reversed and remanded, with directions.*

Mr. CHIEF JUSTICE CARTWRIGHT, dissenting:

I am unable to agree with the conclusion reached in this and other cases at the present term that district road taxes regularly assessed and levied under the Road and Bridge law in force prior to July 1, 1913, could not be afterward collected because of the repeal of the law under which they were levied. In the several towns under the labor system district road taxes were assessed and lists were made and subscribed by the commissioners of highways and filed in the offices of the town clerks under the law in force at the time. That law provided that the commissioners of highways of each town should annually ascertain, as nearly as practicable, how much money must be raised by tax on real and personal property and railroad property for the making and repairing of roads within the limit fixed by the

law, and should levy and assess the same as a road tax against said property. The commissioners were required to make a list for each district, containing a description of each tract of land in the district, and the name of the owner, if known, and the name of the owner of any railroad property, and set opposite each tract of land the valuation thereof, and opposite each valuation should extend the road tax assessed thereon in a separate column. The lists were to be deposited with the town clerk and filed in his office, and the clerk was to make a copy of each list and deliver the same to the respective overseers of highways of the several districts, one copy to contain the real and personal property road tax. It was the duty of the town clerk to post notices of the amount of road tax assessed on each $100 worth of real and personal estate and that persons interested could pay the same in labor on the highways. Every overseer of highways was to give notice to each person residing in his district against whom a land, railroad property or personal property road tax was assessed, of the time and place when he might appear and pay his road taxes in labor, and it was provided that any person might elect to pay the same to the overseer in money. If the road tax was not paid, either in labor or money, to the overseer, a delinquent list was to be returned and laid before the board of supervisors, and it was made the duty of the board to cause the amount of arrearage of the road tax to be levied on the lands returned.

The Road and Bridge law under which the district road taxes were assessed and levied was repealed by the act which took effect on July 1, 1913, but chapter 131 of the Revised Statutes of 1874 provides that no new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any right accrued or claim arising under the former law or in any way whatever affect any right accrued or claim arising before the new law takes effect, save only that the proceedings there-

265 - 36

after shall conform, as far as practicable, to the laws in force at the time of such proceedings.

At the time the tax lists were made and filed with the town clerks the Road and Bridge law authorized the levy of the tax, which might be paid in labor, and if not so paid should become a tax upon land when levied by the board of supervisors in the manner prescribed by the statute. (*People* v. *Chicago and Illinois Midland Railway Co.* 260 Ill. 624.) Before July 1, 1913, the several towns had acquired a right to payment of the tax either in labor or money, at the election of the tax-payer, and those who paid in labor were merely satisfying a perfectly legal and valid claim against their land for the amount of the tax. The right to have the tax levied on land by taking the steps required by law had accrued before the present statute took effect, and I do not see how it can be said that the right was not saved under the provisions of chapter 131. The overseers had the collection of the tax in charge, and if it was not paid to them, the duty was enjoined upon the board of supervisors, upon the return of the delinquent list, to cause the amount of arrearage returned to be levied upon the lands returned and to be collected in the same manner as other taxes. The sole objection of the appellant in this case was that the law had been repealed, and there was no objection that the proper steps for the collection of the tax were not taken or were not in conformity, as far as practicable, with the present statute. If the appellant owed the tax on July 1, 1913,—which I think cannot be denied,— the right to it had accrued and the right to collect it was saved by the statute.

The decision in *People* v. *Toledo, St. Louis and Western Railroad Co.* 249 Ill. 175, does not justify the conclusion that the right to collect the tax was destroyed by the repeal of the statute. In that case the highway commissioners, on March 30, 1909, fixed the amount of the levy at thirty cents on the $100 but took no steps to levy the

tax, and on April 6, 1909, at the annual town meeting, the labor system was abandoned and the cash system of paying road and bridge taxes was adopted.    Afterward, and when there was no law for the levy of a district road tax in the town, the commissioners, on April 20, 1909, fixed the rates to be allowed for labor and made the tax lists and filed them in the office of the town clerk.    No tax had been levied under any existing law, and the levy of the tax under the labor system after the township had adopted the cash system was illegal and void.    In this case and other kindred cases the tax was levied under an existing law, and the present Road and Bridge law was not adopted until June 27, 1913, only three days before it took effect.