The Peoria and Pekin Union Railway Company

*v.*

The People *ex rel.* Knupp, Collector.

*Opinion filed October 25, 1902.*

1. Taxes—*grant of power to tax will be strictly construed.* In determining the meaning of a grant of power to levy taxes, strict construction will be given to that which is relied upon to confer the power, but the construction will be liberal in all that tends to protect the tax-payer.

2. Same—*when power of county to levy an additional tax under vote of people is exhausted.* If the preamble to the county board's resolution to submit the question of a tax levy in excess of seven and one-half mills on the dollar recites that the purpose is to pay existing debts of the county, other than bonded, amounting to "about the sum of $100,000," authority to levy such excess tax, conferred by an affirmative vote of the people upon the question, is exhausted when substantially $115,000 excess tax has been so raised.

3. Same—*essentials of county board's order for excess tax.* It is essential to a good and valid order of the county board for an excess tax levy, that it shall disclose to the voters either the length of time the levies at the excessive rate shall continue or the amount to be raised by such excess levy.

4. Same—*county clerk, cannot enlarge resolution of county board.* If the county board's resolution recites the amount to be raised to meet the county indebtedness as "about the sum of $100,000," the fact that the county clerk, in printing the ballots, specifies that the additional tax shall be levied "until a sufficient amount is raised to meet the indebtedness of the county," does not enlarge the resolution so as to confer power to levy excess tax until all county indebtedness is paid, notwithstanding it greatly exceeds $100,000.

Appeal from the County Court of Peoria county; the Hon. R. H. Lovett, Judge, presiding.

Stevens, Horton & Abbott, for appellant:

The power of counties to levy taxes is limited in the constitution. It is there provided that the aggregate taxes assessed by the county authorities shall not exceed seventy-five cents upon the one hundred dollars, except for the payment of indebtedness existing at the adoption of the constitution, unless authorized by a vote of the people. Const. 1870, art. 9, sec. 8.

The manner of submitting to a vote of the people of the county the question of authority to levy more than seventy-five cents on the one hundred dollars is carefully provided. The county board is in such cases required, in an order entered of record, to set forth the amount of such excess required and the purpose for which required, and provide for the submission of the question of assessing an additional rate required, to a vote of the people at the next election for county officers after the adoption of the resolution, etc. Hurd's Stat. chap. 34, sec. 27.

The specifications required in the order of the board are manifestly intended to afford tax-payers, in concise form, full information touching the amount and purpose of the additional tax and the time it will be required. A statute enacted for such a purpose should receive a construction in line with the apparent object of the law. It should be construed strictly when examined from the standpoint of the county's power; it must be liberally construed when considered with reference to the protection of the tax-payer. *French* v. *Edwards,* 13 Wall. 506; Cooley on Taxation, 209, 215; *Hewes* v. *Reis,* 40 Cal. 255; *State* v. *Jersey City,* 35 N. J. L. 381; *Torey* v. *Milbury,* 21 Pick. 64; *Chicago* v. *Railroad Co.* 20 Ill. 286; *McLaughlin* v. *Thompson,* 55 id. 249; *Chicago* v. *Wright,* 32 id. 192; *Railroad Co.* v. *People,* 163 id. 616; *Riverside Co.* v. *Howell,* 113 id. 256.

It was necessary for the county board to fulfill the requirements of the law before it could levy the additional tax. A power to levy taxes can only be exercised as given, otherwise the acts of the board are nugatory. *Stock Yards* v. *People,* 127 Ill. 22; *Bridge Co.* v. *People,* id. 634.

Inasmuch as the power to levy the additional tax is given only on compliance with certain conditions, the burden is upon the People to show compliance with those conditions. *English* v. *People,* 96 Ill. 566.

Appellant contends that a grant of power to collect $100,000, or "substantially" that sum, does not authorize the collection of $132,000. Hurd's Stat. chap. 34, sec. 27.

William V. Tefft, State's Attorney, (Edwin Hedrick, of counsel,) for appellee:

The presumption of law is that the tax is legally levied and collectible, and the burden is on the objectors to show that such tax is illegal and the levy void. *Beers* v. *People*, 83 Ill. 488; *Railway Co.* v. *People*, 174 id. 80; *Mix* v. *People*, 86 id. 312; 81 id. 118; *People* v. *Givens*, 123 id. 352; *Buck* v. *People*, 78 id. 560; *Railway Co.* v. *People*, 119 id. 217; *Chiniquy* v. *People*, 78 id. 572.

The resolution of the board set forth, substantially, the amount of the indebtedness at about $100,000. "About" $100,000 means approximately that amount. Where the intention is clear to include the entire indebtedness it means the amount of that indebtedness. *McLay* v. *Perry*, L. T. (N. S.) 152; *Railway Co.* v. *People*, 183 Ill. 24.

The objections made to the tax in question are merely technical, and do not go to the substantial justice of the tax itself. The mere non-compliance with some direction of the statute does not render the levy illegal, if it is otherwise just and equitable. *Raley* v. *Guimm*, 76 Mo. 273; *Mills* v. *Gleason*, 11 Wis. 515; *Moore* v. *Fessenback*, 88 Ill. 422; *Buck* v. *People*, 78 id. 560; *Railroad Co.* v. *Surrell*, 88 id. 535.

Mr. Justice Boggs delivered the opinion of the court:

County taxes were levied and extended on the books of the county collector of Peoria county against all property assessed for taxation in the year 1900, at the rate of one hundred cents upon each $100 of the assessed value thereof. Section 8 of article 9 of the constitution of 1870 limits the power of county authorities to assess taxes for county purposes, (except for indebtedness existing at the time of the adoption of the constitution,) in the aggregate to seventy-five cents on each $100 of the valuation of the property assessed for taxation, unless authorized by a vote of the people of the county to levy a greater rate of taxation. The levy thus made for the year 1900 resulted in the extension of taxes against the property

of the appellant company in the said Peoria county in the amount of $1027.26 in excess of the amount which would have been required to be paid by an assessment of taxes at the rate limited by the constitution, in the absence of a vote of the people. The appellant company paid the taxes assessed against its property save as to this amount of $1027.26, and to the application of the county collector of the said county, filed in the county court of Peoria county, for a judgment and order of sale of the property belonging to it for said sum so remaining unpaid, the appellant company filed its objection, in substance, that said excess in the rate of county tax in said county for the said year was not for the purpose of paying any indebtedness which existed at the time of the adoption of the constitution, nor was the assessment of such excess authorized by a vote of the people of the county. A hearing of the objection resulted in the rendition of a judgment and order of sale of the property of the appellant company as prayed in the application of the county collector. This is an appeal to reverse the judgment.

It was stipulated by the parties the levy in dispute had not been ordered for the purpose of paying any indebtedness existing at the time of the adoption of the constitution.

The contention in behalf of the People, upon the relation of the county collector, was and is, that the levy in excess of the rate permitted by the constitution was authorized by a vote of the people of the county. The statute providing for the submission of a question of that character to the people (Hurd's Stat. 1899, chap. 34, sec. 27,) is as follows: "Whenever the county board shall deem it necessary to assess taxes, the aggregate of which shall exceed the rate of seventy-five cents per $100 valuation of the property of the county, except when such excess is to be used for the payment of indebtedness existing at the adoption of the constitution, the county

board may, by an order entered of record, set forth substantially the amount of such excess required, and the purpose for which the same will be required, and if for the payment of interest or principal, or both, upon bonds, shall in a general way designate the bonds and specify the number of years such excess will be required to be levied, and provide for the submission of the question of assessing the additional rate required to a vote of the people of the county at the next election for county officers after the adoption of the resolution; and it shall be the duty of the county clerk in his election notice to give notice of such submission. The votes therefor shall be, 'For additional tax,' and those against shall be, 'Against additional tax.' The votes shall be canvassed and returned the same as those for county officers, and if a majority of the votes cast upon the question are 'For additional tax,' then the county board shall have power to cause such additional tax to be levied and collected in accordance with the terms of such resolution, and the money so collected shall be kept as a separate fund and disbursed only for the purposes for which the same was raised: *Provided*, any surplus that may remain after the payment of all demands against said fund may be used for other purposes."

It was further stipulated between the parties, that at the September, 1896, meeting of the supervisors of said county the following resolution was adopted:

"Whereas, the levy of seven and one-half mills on the one dollar, as provided by statute, has failed to produce an amount sufficient to pay the expenses of the county board; and whereas, the floating debt of the county has been increased each year, until it now amounts, with the bills audited at this session of the board, to about the sum of $100,000; therefore,

"*Resolved*, That the county clerk be instructed to give the proper notice that the question of levying an additional tax of not to exceed two and one-half mills on the dollar per annum, until a sufficient amount is raised to meet the indebtedness of the county, will be submitted, to be voted upon at the coming November election, and that he cause to be printed on the bal-

lots to be used at the said election the words: 'For additional tax levy, not to exceed two and one-half mills.' 'Against additional tax levy, not to exceed two and one-half mills.' "

It was further stipulated, that in pursuance of the last mentioned resolution the county clerk gave notice of the election in the words following: "The question of levying an additional tax of not to exceed two and one-half mills on the dollar per annum, until a sufficient amount is raised to meet the indebtedness of the county, will be submitted." It was further stipulated, that in conformity with the said notice there was printed on each ballot, at the November election, 1896, the following: "To levy an additional tax of not to exceed two and one-half mills on the dollar per annum, until a sufficient amount is raised to meet the indebtedness of the county.—'Yes.' 'No.'" It was further stipulated, that the total vote cast at the said November, 1896, election was 19,898 votes; that out of such total vote 2438 voted "Yes" on said question and 2162 voted "No."

It appeared that, acting under the authority of the election set forth in the stipulation, county taxes were levied and collected on all of the property assessed for taxation in the county of Peoria for the years 1897, 1898 and 1899, at the rate of one hundred cents on each $100 of the assessed value of such property, and that the amount collected by such levies and assessments during such years, in excess of that which would have been produced by a levy of seventy-five cents on each $100, amounted, in the aggregate, to the sum of $115,848.56.

The appellant company insists that as the aggregate of the taxes in excess of seventy-five cents on each $100 which had, during the years 1897, 1898 and 1899, been collected by the county of Peoria under the authority of the resolution of the county board, and the vote of the people adopting the same, exceeded the sum mentioned in the resolution authorizing the vote, all power to act under the said resolution and the said vote had been exhausted

prior to the levy of taxes made for the year 1900, and that therefore the levy for the year 1900 objected to by them was in contravention of the constitutional provision limiting the power of county boards in the matter of levying and assessing taxes. The position of the appellee is, the indebtedness of the county of Peoria at the time the resolution was passed by the county board amounted to more than $132,000, and that the election conferred power to levy taxes in excess of the constitutional limitation until a sufficient amount should thereby be collected to meet and discharge the entire county indebtedness then existing.

In the case of *Peoria and Pekin Union Railway Co.* v. *People ex rel.* 183 Ill. 19, this court was called upon to determine as to the power of the county board of said county of Peoria to levy taxes for county purposes for the year 1898 in excess of the rate fixed by the constitution, by virtue of the same resolution of the board of supervisors and the same election which is here relied upon to authorize the levy here objected to by the appellant company. We there said (p. 25): "The question is not now presented as to whether a greater sum than $100,000 can be raised, even though the indebtedness existing at the time of the vote amounted to $113,196. On that question we refrain from expressing an opinion." It should be observed the indebtedness of the county at the adoption of the resolution by the board was then stipulated to be about $113,000. We there held, however, that it was not essential that the resolution of the board calling the election should specify the number of years during which such excess in the rate should be levied, when the indebtedness to be paid by such excess was other than the interest or principal of bonds issued by the county. If the purpose of the levy at the excessive rate is to provide funds for the payment of the interest or principal of bonded indebtedness of the county, the statute expressly provides that the resolution shall "specify the

number of years such excess will be required to be levied."
We there held, also, that the statutory requirements were
satisfied if the order of the board set forth, "substan-
tially, the amount and purpose of the excess," and that
the preamble and resolution of the board are both part
of one and the same order, and that "these set out in an
ample manner all the statute requires, viz., a substan-
tial statement of the amount of the indebtedness, to-wit,
$100,000."

A valid order for an election may specify the number
of years during which the excessive rate shall be levied,
or may, as we said in the former case, accomplish the
same purpose by setting forth, substantially, the amount
to be levied by virtue of the vote of the people. It is
indispensable to a good and valid order of the board that
it should disclose to the voters either the length of time
the levies at the excessive rate shall continue, or the
amount which is to be raised by such excess in the rate
of taxation. If, as in this instance, the mode of setting
forth the amount to be raised is adopted, the authority of
the county board to levy such excess rate must be held
to be restricted to the production of substantially the
amount named in the resolution. The language of the
preamble of the resolution, which, as we have held be-
fore, may be resorted to as a part of the order, discloses
that the purpose of the election was to authorize the ex-
cess in the rate of taxation in order to discharge the in-
debtedness of the county in "about the sum of $100,000."
In the decision of the prior case between the same par-
ties we accepted the word "about" as the equivalent of
the word "substantial," which was employed in framing
the statute under which the election was called and held.
In 1 Cyc. 196, 197, it is said: "The use of the word 'about'
gives a margin for a moderate excess in or diminution of
the quantity mentioned and negatives the idea that exact
precision is intended. It imports that the actual quan-
tity is a near approximation to that mentioned, and when

the context limits and restrains its meaning, does not materially impair the certainty of a description."

In determining the meaning of any grant of power to levy taxes it is the universal rule that strict construction shall be given to that which is relied upon to confer the power, and that the construction shall be liberal in all that tends to the protection of the tax-payer. (Cooley on Taxation, 209-215.) One hundred and thirty-two thousand dollars cannot be said to be a near approximation to $100,000, nor can an excess of $32,000 be said to be only a moderate excess above $100,000. To so hold would be to reverse the rule laid down by Judge Cooley and universally received as correct, and to give a highly liberal, and even very loose, construction against every interest of the tax-payers. We must therefore hold that the resolution here involved, being the basis of the grant of power to exact taxes in excess of the constitutional limitation, cannot be construed to authorize the further exercise of such taxing power after levies made under it had resulted in the payment by the tax-payers of the sum of $15,000 and more in excess of the said sum of $100,000 specified in the resolution. The interest and safety of the tax-payers demand this construction should be adopted as a necessary protection against the abuse of the power of taxation.

In the notice given by the county clerk calling the election under the resolution of the board, and in the ballots prepared and printed by the county clerk for the use of the voters at the election, it is contended the voters were notified that the proposition to be voted upon was, that the additional tax should be levied "until a sufficient amount is raised to meet the indebtedness of the county." Counsel for the appellee contend it appeared from the evidence the actual indebtedness of the county at the time of the adoption of the resolution exceeded $132,000, and that the ballots cast by the voters should be construed to authorize the levy of the addi-

tional rate until that amount should be raised. The authority to levy taxes in excess of the rate permitted by the constitution cannot be conferred by the act of the county clerk in framing the notice calling the election or preparing the form of the proposition to be printed upon the ballots. The statute indicated that the voters should by the ballots be called upon to vote "For additional tax" or "Against additional tax,"—that is, for or against the additional tax as proposed in the order adopted by the county board. The printing of additional words upon the ballots could have no effect to thus change and enlarge the resolution of the county board. Aside from this, we think the voters would understand the proposition printed on the ballot to mean that the county board should be authorized to levy the proposed excess rate of taxation until a sufficient amount should thus be produced to meet indebtedness of the county to the amount specified in the resolution of the county board authorizing the election to be held, viz., $100,000.

We hold the power conferred upon the county board of Peoria county by the resolution of the board, and the adoption by the people, at the election, of the proposition contained in the resolution to levy two and one-half mills upon each dollar in excess of the seven and one-half mills allowed to be levied by the provisions of the constitution to meet the indebtedness of the county in about the sum of $100,000, was exercised and exhausted by the levy of such excess rate in the years 1897, 1898 and 1899, and the production by the levies for those years of a sum in the aggregate exceeding $115,000, and that therefore the levy of such excess rate in the year 1900 was without authority of law. It follows that the county court erred in overruling the objection presented by the appellant company and in rendering judgment against its property.

The judgment must therefore be reversed.

*Judgment reversed.*