The Illinois Central Railroad Company filed objections in the county court of Jasper county to the application of the county collector for judgment and an order of sale of the company's property for delinquent 1934 taxes. Its objections were overruled, judgment and order for sale were rendered, and the company has appealed.
The board of supervisors of Jasper county levied $16,200 for general county purposes for the year 1934. Appellant objected to the following items in that levy: "Fuel, water and lights for courthouse, $1000; fuel, water and lights for jail, $300, and for bridges, $400." The company contends that the items, "fuel, water and lights" for the court-house and for the jail, were improper in that several purposes are covered by one amount, or, in other words, the levies for these purposes should have been made specific by further itemization, and that the item for "bridges" is uncertain and does not sufficiently designate the purpose for which the levy made is to be used. In People v. Jackson, 272 Ill. 494, we held valid a levy for "public buildings, light, heat and repairs, $12,000," and in People v. Chicago and Eastern IllinoisRailroad Co. 336 Ill. 506, we held that *Page 410 
a levy for "light and water" need not be further itemized. (See, also, People v. Chicago, Burlington and Quincy Railroad Co.306 Ill. 529.) Tax-payers were sufficiently advised by these items in the levy that the purpose was to supply fuel, water and lights for the courthouse and for the jail for the current year, and it was not necessary to state the separate cost of the fuel, the water or the lights. As to the item of $400 for "bridges," we held in People v. Chicago and Northwestern Railway Co. 249 Ill. 170, and People v. Bowman, 253 id. 234, that the item "bridges" fairly includes the building of new bridges, the repairing of old ones and the construction of approaches. These objections were, therefore, properly overruled.
The appellee confesses error was committed by the overruling of the appellant's objection to the item of, "$100 for fire department" contained in the levy ordinance of the city of Newton.
Objections were made to, "street and alley fund, $200," "for streets and alleys, $200," and "for street and alleys, $2000," contained in the respective 1934 levy ordinances of the villages of Rose Hill and Willow Hill, and the city of Newton. In view of our holdings that levies for streets and alleys are for a single purpose, these objections were properly overruled. People v.Eastern Illinois and Missouri Railroad Co. 335 Ill. 245; People
v. Millard, 307 id. 556.
Three other items were objected to in the village of Rose Hill tax levy ordinance, viz., "election fund $40," "light fund, $630," and "sidewalk and bridge fund, $100." The first two items are such as would ordinarily be found in an annual village tax levy ordinance. The expense items connected with holding an election in a village are few in number and small in amount. No statutory provision is violated by a failure to further itemize the election item of $40. The same is true of the item of $630 for light for the village. The fact that the word "fund" was included *Page 411 
does not necessarily make the items vague and indefinite. While we have held that it is possible for a fund or an account to be for different purposes and subject to the objection that it is indefinite, (People v. Chicago and Eastern Illinois RailwayCo. 361 Ill. 470; People v. Cairo, Vincennes and Chicago RailwayCo. 243 id. 217,) such is not the case here. We upheld a levy for "coal and gas fund," and said that it was equivalent to a levy for heat and light, in People v. Chicago, Burlington and QuincyRailroad Co. supra. These items, objected to as indefinite because of the use of the word "fund," were readily understood and are not indefinite. For that reason the objections to them were properly overruled.
The objection to the levy of $100 for, "sidewalks and bridges," should have been sustained, because these were two separate purposes. We held in People v. Missouri Pacific Railroad Co.332 Ill. 53, that an item for roads and bridges should be stated separately. It was error to overrule this objection.
Appellant objected to the 1934 levies in fifteen school districts in Jasper county on the ground that, in each district, the levies were so unreasonable and unnecessary as to show an abuse of discretion by the taxing authorities; that the directors, in making the 1934 levy, did not take into consideration the cash on hand, the uncollected 1933 taxes still in process of collection, and the amounts which would be received from the motor fuel tax, and the occupational tax through the State distributive school fund; that they made no attempt to estimate the funds which would be needed to operate the schools during the tax year; and that the result of permitting the levy for the year 1934 to stand, would be an unnecessary accumulation of funds in the school treasuries. The financial status of each district on the day of the levy was stipulated, but the appellee objected to the materiality of the facts and figures contained in the various exhibits. District 35 illustrates the *Page 412 
data furnished with reference to each of the districts. In it the net funds available for a two-year period included cash on hand $684.49 and a balance of $262.35 of the 1933 taxes, which the testimony shows was collected in the fall of 1934. It was stipulated that this district received $136.72 during the eight months' period in which the motor fuel tax was diverted, in part, to school purposes. From the occupational tax, based on eleven months' actual receipts, it was estimated that the district would receive $971.46 over a two-year period, or $485.73 for one year. There were no outstanding orders or debts at the time the 1934 tax levy was made. The average cost of operating the school district for one year was $684.25, based on the cost for the three preceding years, and the tax levied for 1934, at the rate of one dollar, would produce the sum of $564.17. It is contended that the district would have $2055.02 net funds available for a two-year period, and that no levy should have been made for the year 1934. Substantially the same objections are made to the tax in the other school districts. The only difference is in the amounts of the tax levy, cost of operation and net funds available. Only school districts 40 and 41 had any outstanding school orders, and it is stipulated that these were deducted from the total funds available in those two districts.
It was stipulated that appellee had made a prima facie case, and no question is made as to the legality of the levy in any district by reason of the same exceeding the statutory rate. The exhibits introduced by appellant, and objected to as immaterial by appellee, purport to cover a two-year period. All the levies were made on August 7, 1934, and the fiscal year of the school districts ended on June 30, 1935. The appellant objects to the relevancy and materiality of the county collector's testimony showing that only a part of the 1934 levy was received by each district in May, 1935, and that the balance collected thereof would be paid in December, 1935. We have taken from the exhibits, *Page 413 
which are admitted to be correct as to amounts, the figures for the year 1934-5, in the fifteen districts, which are shown in the following table:

=============================================================
 | Average | Levy | Cash on | Uncollected
 Dist. | Annual cost | for | hand June | taxes for
 No. | of operation. | 1934. | 30, 1934. | 1933.
-------|---------------|------------|-----------|------------
 35 | $ 684.25 | $ 564.17 | $ 684.49 | $ 262.35
 39 | 552.22 | 625.58 | 901.48 | 299.52
 40 | 757.46 | 531.17 | 495.45 | 243.07
 41 | 12,306.88 | 10,755.75 | 9,541.86 | 5,117.79
 42 | 469.12 | 520.35 | 505.67 | 203.85
 58 | 1,314.40 | 758.26 | 1,401.51 | 507.37
 59 | 572.89 | 518.17 | 1,109.82 | 257.27
 69 | 789.31 | 807.77 | 1,207.42 | 370.89
 70 | 940.67 | 620.29 | 732.93 | 350.79
 72 | 719.64 | 621.25 | 707.04 | 326.25
 75 | 742.90 | 524.15 | 987.90 | 463.05
 76 | 997.40 | 522.04 | 1,862.72 | 523.98
 78 | 637.40 | 517.75 | 443.42 | 514.35
 88 | 2,661.79 | 1,616.93 | 730.34 | 368.84
 115 | 723.70 | 696.55 | 1,072.28 | 550.18
-------------------------------------------------------------

The appellant made no showing as to what amount, if any, had been received in prior years from the State distributive school fund. The act providing for a transfer of a portion of the motor fuel tax to school purposes was not approved until May 4, 1934. It provided that after March 1, 1935, the motor fuel tax money should be otherwise distributed. (Laws of 1933-4, first, second and third sp. sess. p. 227.) The statute directing payment of a part of the occupational tax into the common school fund, became effective July 1, 1933, (Laws of 1933, p. 1090,) so that there was available to the directors of the fifteen districts, eleven months' experience to assist them in estimating what amount could be expected from this source during the year 1934-5, but, at best, the amounts to be expected from both these sources, were highly conjectural. The appellant's evidence *Page 414 
consisted of exhibits showing the cash on hand, the amounts of uncollected 1933 taxes, and the cost of operation in each district for the last three years preceding 1934-5. All the money from the motor fuel tax was received by the districts subsequent to August 7, 1934, the date of the levies. There is nothing to show what expenses were anticipated by the directors in any district for the fiscal year 1934-5. The 1934 levies were, for the most part, less in amount than the average annual cost of operation.
It was the duty of the various school directors to make their levy on or before the first Tuesday in August. They also had the right to maintain sufficient money in the treasury to pay indebtedness as it became due, and it was not necessary for them to wait until money was actually needed to defray outstanding obligations, before levying a tax. (Mathews v. City of Chicago,342 Ill. 120; People v. Chicago and Northwestern Railway Co.
331 id. 544; People v. Crear, 300 id. 611.) The presumption is that the school directors, in levying a tax for the year 1934-5, properly discharged their duties and the burden rests upon the objector to show that such was not the case. Gates v. Sweitzer,347 Ill. 353; People v. Hassler, 262 id. 133.
In People v. Baltimore and Ohio Southwestern Railway Co.353 Ill. 492, the Wayne county board of supervisors made a levy, in 1931, of $15,000 for county highway purposes. The county treasury then had $10,131.58 cash in the fund for that purpose. The actual expenditures for this purpose were shown to be $15,661.74, and there was proof that there had been, in previous years, unlawful diversions from this fund to the general county fund. The objection made in that case, aside from the charge that a similar unlawful diversion of funds was contemplated, is similar to the objections made in the case before us. We held that the levy was valid, but we recognized the rule that taxes are levied only to defray the necessary expenses of government and not to enrich the public treasury; that any *Page 415 
unnecessary accumulation of money in the public treasury is unjust to the people, because it deprives them of the use of their money for a considerable period, and that this is unwise, in that it may tempt those who have charge of the funds to use the money improperly. But we said that public authorities have the duty to use sound business judgment in estimating the amount of taxes required to be levied each year, and they have the right to provide funds to meet obligations when they became due. We said further: "A tax levy largely in excess of the amount required for the purpose for which it is made, with the intention of creating a surplus to be used for another purpose, is not a legal tax levy even though the rate is within the limit fixed by statute. (People v. Illinois Central Railroad Co. 266 Ill. 636.) But the burden rests upon an objector to sustain his objection to a tax, and the courts will not interfere with the decision of taxing bodies on the question of the amount of taxes to be levied where it does not clearly appear that they have abused the discretion vested in them. (People v. Sandberg Co. 277 Ill. 567.) From an examination of this record we cannot say that it is clearly shown that it was the intention of the county board, in making the levy for highway purposes in 1931, to provide a surplus in the county highway fund to be used for a purpose other than county highway purposes, or that the amount of the levy is grossly excessive and shows an intention to accumulate funds faster than they are likely to be needed for highway purposes.
In People v. Wabash Railroad Co. 265 Ill. 543, the facts were that there was $23,000 in the county treasury available for State aid roads at the time the levy was made which was objected to. We held that this fact did not invalidate the additional levy for that purpose. We cited People v. Atchison, Topeka and Santa FeRailway Co. 261 Ill. 33, with approval, where we upheld a levy of $51,000 although there was $56,000 in the county treasury. At *Page 416 
page 36 of the last mentioned decision we said: "Even though the balance of $56,846.65 could all be used for county purposes, it does not follow that the law did not authorize the county board to levy and collect additional taxes for the county expenses for the ensuing year. It is well known that under the law the taxes levied for the expenses for any year are not collected so as to be available to be paid out for county expenses until several months after September 1. The argument of counsel for appellant is, that at the September meeting the county board should not have in its treasury anything more than enough money to pay the bills and indebtedness then due; that any money needed to pay current county expenses after September 1 until the taxes are paid in should be raised by the sale of anticipation warrants. * * * With this we cannot agree. * * * Taxes should not be levied for the purpose of accumulating funds for the remote future or for contingencies which may never occur; * * * but no court has ever held, in construing a statute such as ours, that levying taxes a short period in advance to provide for ordinary and necessary expenses was not fully justified. The revenue statutes must be given a reasonable construction. It was not intended by the legislature that the county authorities should not have a reasonable discretion in arranging in advance for the collection of the necessary tax for the payment of the current expenses."
In Cleveland, Cincinnati, Chicago and St. Louis Railway Co. v.People, 208 Ill. 9, it was objected that the school directors had levied $1800 when only $1100 was needed by the district for school purposes, and that it was intended to use the remaining $700 to pay bonded indebtedness and interest. On page 11 we said: "The levy for school purposes was only for two and one-half per cent of the taxable property of the district and was within the limit allowed by the statute. Within that limit the board of directors were clothed with a large discretion in determining the amount *Page 417 
necessary to be raised for maintaining free schools in the district and with which to pay the ordinary and contingent expenses thereof, and when it appears that a tax levy is clearly within the statutory power conferred upon the board of directors, the courts in the absence of fraud, are powerless to prevent the collection of the tax from the fact alone that more has been levied by the board of directors than the court might find was necessary to maintain free schools and meet the expenses of maintaining the same in the school district for the ensuing school year." (See also People v. Chicago and Eastern IllinoisRailway Co. 306 Ill. 402.)
The appellant relies on People v. Millard, supra, and People v.New York, Chicago and St. Louis Railroad Co. 353 Ill. 518. In theMillard case we held a levy to pay interest on road bonds excessive and void, where the municipality had sufficient funds on hand to pay interest charges for two years with a balance over. In the latter case, the East Side Levee and Sanitary District had on hand, and in the process of collection, three times its average yearly expense. There were no unusual improvements in immediate contemplation. It was under no contract calling for the expenditure of any considerable amount of money and there was no bonded indebtedness to come due for several years. We held that the district could not make a levy, lawfully, for the purpose of creating a surplus, merely because it contemplated making certain expensive improvements in the future which had not been definitely determined upon at the time of making the levy, and that, under the circumstances, the entire levy for the year in question, was illegal and void.
The objector does not make such a showing here and under the facts we cannot hold that there was a clear abuse of the discretion lodged in any of the fifteen school districts. The county court properly overruled these objections.
The judgment of the county court of Jasper county is affirmed as to all items objected to except the item of $100 *Page 418 
for the fire department of the city of Newton, and the item of $100 for sidewalk and bridge fund, in the ordinance adopted by the village of Rose Hill, and as to these two items the judgment is reversed and the cause remanded, with directions to sustain the objections thereto.
Affirmed in part, reversed in part and remanded, withdirections.