(No. 32122.—

THE PEOPLE *ex rel.* Lulu M. Ross, County Collector, Appellee, *vs.* CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant.

*Opinion filed January 24, 1952.*

C. W. KROHL, and J. I. SHIELDS, both of Chicago, and FRANKLIN U. STRANSKY, of Savanna, for appellant.

LAWRENCE A. SMITH, State's Attorney, of Savanna, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Chicago, Burlington and Quincy Railroad Company, filed objections in the county court of Carroll County to the application of the county collector for judgment for the sale of real estate for the nonpayment of taxes for the year 1948, levied for educational purposes by school districts Nos. 72, 73, 200, 201, and 204. From a judgment overruling its objections, defendant prosecutes this appeal.

Like *People ex rel. Ruchty* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 408 Ill. 480, and *People ex rel. Ross* v. *Chicago, Burlington & Quincy Railroad Co., ante,* page 60, this case involves the interrelation of the Revenue Act and the School Code as they affect school district tax rates. These tax rates are normally governed by the provisions of the School Code. (Ill. Rev. Stat. 1947, chap. 122, article 17.) In 1945, however, the General Assembly established a State-wide program of full value assessments, and in order to prevent undue fluctuations in the taxing power of school districts and other taxing bodies, added section 162a to the Revenue Act. (Ill. Rev. Stat. 1947, chap. 120, par. 643a.) This section provides formulas designed to limit, during the period of transition to full value assessments, the amount by which the taxes to be collected could vary upward or downward from pre-existing levels. As a result, the rates of taxing bodies are subject to two limitations: that which prevails normally, and that which is applicable temporarily under section 162a of the Revenue Act.

In 1948, the school districts here involved were subject to the normal tax rate limit of .50 per cent provided by section 17-2 of the School Code, and in addition, their tax levies were subject to being scaled down in accordance with the formulas of section 162a of the Revenue Act. The tax rate permitted to be extended on behalf of each of these school districts under section 162a of the Revenue Act was lower than the normal maximum tax rate of .50 per cent provided by section 17-2 of the School Code. Each of these districts conducted a referendum election in 1948 at which an increase in its tax rate for educational purposes was authorized by the voters. In districts Nos. 72, 200, and 201, the rate sought and authorized was .75 per cent, in district No. 73, it was .60 per cent, and in district No. 204 it was .61 per cent. The rate extended for each district in 1948 was lower than the rate authorized by referendum, but in excess of the rate which would have been permitted under the formula provisions of section 162a of the Revenue Act in the absence of a referendum.

The defendant challenges the validity of these rates, asserting that the 1948 referendum of each district was illegal because not authorized by statute. The specific contention of the defendant is that since the rate authorized to be extended under section 162a of the Revenue Act was in each instance less than .50 per cent, a referendum to authorize a rate of .50 per cent was essential before any higher rate could be achieved. In other words, the contention is that a referendum election to authorize a taxing district to levy at the normal maximum rate prescribed by statute is a condition precedent to a valid referendum to attain a higher rate.

Section 162a does not expressly impose such a requirement. Defendant's contention, however, is based upon its construction of the following langague of section 162a as it existed in 1948: "No proposition to increase a tax-rate limit above that provided by this Section, shall increase the

tax-rate limit to more than the maximum tax-rate limit, whether available by referendum *or otherwise,* afforded by the terms of any other applicable statutory provision: * * *." (Italics supplied.) Emphasizing the italicized phrase, "or otherwise," defendant contends that it "must refer to a maximum rate limit established by some other means than a referendum, which, under the present circumstances, can mean only by direct act of the legislature." Defendant's interpretation assumes that all maximum rates to which section 162a is applicable fall into two categories, (1) those fixed by direct act of the legislature and (2) those authorized by referendum. The assumption is unsound. Without attempting an exhaustive list of instances in which a normal rate may be increased to a maximum rate by a method other than referendum, it is sufficient to refer to the provision which authorizes an increase in the normal city and village tax rate for street and bridge purposes by a three-fourths vote of the city council or board of trustees, (Ill. Rev. Stat. 1947, chap. 24, par. 696a,) and to the provision by which the normal township road and bridge tax rate may be increased to a specified maximum rate by the written consent of a majority of the board of town auditors. (Ill. Rev. Stat. 1947, chap. 121, par. 62.) It is to maximum tax rates of this type, fixed by methods other than referendum, that the phrase "or otherwise" applies. It does not apply to normal rates which are available to taxing bodies without resort to a referendum or to any other special method by which increases may be obtained.

We have been referred to no statute which requires a referendum to authorize a taxing body to levy its normal statutory rate, nor are we aware of any. *People ex rel. Ruchty* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 408 Ill. 480, required an interpretation of some of the statutory provisions here involved. There, however, the question presented was the validity of a referendum

under those provisions of the School Code which provided for rate increases by steps, with prior referendum authority to levy a particular rate expressly made a condition precedent to the next successive increase by referendum. (Ill. Rev. Stat. 1947, chap. 122, pars. 17-3, 17-5.) Here, there is not only no express requirement of a prior referendum; there is no statute authorizing a school district to conduct such a referendum. In that case, however, we recognized the right of school districts to levy a maximum rate of .50 per cent. We said: "Article 17 of the School Code, as amended, provided different rates at which taxes could be extended under different circumstances. Section 17-2 provided for a general tax rate of .50 per cent for educational purposes," and, again, "Under section 17-2 school districts had a right to levy .50 per cent for school purposes." Section 17-3 authorized an increase of the statutory maximum tax rate from .50 per cent to .75 per cent by calling an election for this purpose. The statute does not purport to require more than one election to increase the tax rate to .75 per cent. An election to establish the first maximum rate of .50 per cent is unnecessary.

In 1951, the School Code was amended to authorize expressly the type of referendum increase here attacked. The School Code now provides: "* * * if the rate sought to be changed is lower than the maximum prescribed in Section 17-2 of this Act, the next highest appropriate rate shall be determined as if the rate sought to be changed were established at such maximum." (Ill. Rev. Stat. 1951, chap. 122, par. 17-5.2.) Defendant argues that this change in 1951 demonstrates that authority for such a referendum was previously lacking. What we said of a similar argument is applicable here: "We do not think the conclusion necessarily follows. The section, prior to the amendment, was subject to construction. It had never been passed upon by this court, and the legislature simply made that certain by express enactment which before

might be thought open to construction.  *  *  * The amendment did not, nor was it intended to, affect the construction proper to be placed upon the original section." *Village of Morgan Park* v. *Knopf*, 210 Ill. 453, 459.

The judgment of the county court of Carroll County is affirmed.

*Judgment affirmed.*