(No. 33767.—

THE PEOPLE *ex rel.* Carl H. Kramer, County Collector, Appellant, *vs.* CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellee.

*Opinion filed March 22, 1956—Rehearing denied May 22, 1956.*

CALHOUN W. J. PHELPS, State's Attorney, of Princeton, (DONALD E. BLODGETT, and GREGG A. YOUNG, of counsel,) for appellant.

TRIMBLE AND TRIMBLE, of Princeton, WALTER McFARLAND, and J. I. SHIELDS, both of Chicago, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellant, the county collector of Bureau County, appeals from an order of the county court sustaining certain of the objections filed by Chicago, Burlington and Quincy Railroad Company, the appellee, to taxes levied against its property in said county for the year 1952.

The first objection of appellee was that the levy for the county general fund was excessive by $92,747.36 and it sought a refund of the amount of tax it was caused to pay by the resulting excessive rate. Pertinent facts, all of which were stipulated, show that the board of supervisors, on September 9, 1952, adopted their annual budget and appropriation resolution for the fiscal year commencing December 1, 1952. The budget fixed the estimated receipts for the year at $364,339.69, which figure contained an estimated revenue of $132,250 exclusive of taxes, and an estimate of $112,089.69 as being the cash balance on hand on December 1, 1952. The record discloses that the sum of $247,330 was appropriated for general county purposes.

On the same day, the board adopted its annual tax levy resolution by which it levied a tax for general county purposes in the total sum of $151,275.

Subsequently, on November 25, 1952, the board amended the budget and appropriation, first, by lowering the estimated cash balance on hand to $54,183.03; second, by lowering the estimate of total receipts to $306,443.03; and, third, by increasing the amount of appropriations to $249,196.40. The levy resolution was not altered and thereafter taxes were extended at a rate which would produce $118,103.81. When the latter amount is totalled with the amount of nontax revenue estimated to be received it produces a sum approximating the amount appropriated for the year.

It appears from the stipulated facts, however, that the actual cash balance on hand in the general county fund on December 1, 1952, was $147,263.55. Appellee admits that the 1952 levy did not have the effect of materially increasing the cash balance which had been accumulated by the county but contends that the board knew, or should have known, what the true cash balance would be and reduced their levy proportionately instead of seeking to preserve the accumulation. At the same time appellee recognizes the propriety of permitting the county to maintain sufficient funds to operate on a cash basis at all times, but contends that the cash balance preserved by the 1952 levy is far in excess of the amount reasonably necessary for such a purpose. Accordingly, by its objection, appellee alleged in effect that all except approximately $50,000 of the cash on hand should have been deducted in determining the tax needs of the county and that the action of the board in failing to do so was unreasonable and an abuse of discretion. The county court, however, held in effect that a cash balance of $101,000 was not unreasonable and sustained the objection only insofar as it related to the remainder of the $147,263.55 cash balance. Appellee does not contest this

result but it is appellant's contention that the court erred in sustaining the objection even to the extent it did.

This court has frequently observed that taxes are levied because they are necessary to defray the expenses of government and not for the purpose of enriching the public treasury. To such end it is held that taxing bodies may not levy taxes faster than they are likely to be needed and that an unnecessary accumulation of money in the public treasury is unjust, impolitic and against the policy of the law. (*People ex rel. Stevenson* v. *Atchison, Topeka and Santa Fe Railway Co.* 261 Ill. 33; *People ex rel. Harding* v. *Chicago and Northwestern Railway Co.* 331 Ill. 544; *People ex rel. Manifold* v. *Wabash Railway Co.* 386 Ill. 149.) At the same time it has been recognized that a reasonable construction of our revenue laws does not require the authorities to wait until money is actually needed to defray outstanding obligations before levying a tax, but permits them to maintain sufficient monies in their treasury to pay indebtedness as it becomes due. (*People ex rel. Brenza* v. *Gebbie,* 5 Ill. 2d 565; *People ex rel. DeRosa* v. *Chicago and North Western Railway Co.* 391 Ill. 347; *People ex rel. Salm* v. *Crear,* 300 Ill. 611.) Thus taxing authorities must anticipate as nearly as they can the amount of money necessary for operating their political subdivision and arrange to have funds ready to meet obligations when due. We have consistently held that the amount necessary for such purpose is ordinarily committed to their reasonable discretion and that courts will not interfere with the exercise of sound business judgment except for a clear abuse of discretion. (*People ex rel. Brenza* v. *Chromium Corp.* 3 Ill. 2d 271; *People ex rel. Schlaeger* v. *Siebel,* 388 Ill. 98.) The presumption is that the authorities, in levying taxes, properly discharged their duties, and the burden is on the objector to clearly show that they did not. *People ex rel. Stevenson* v. *Atchison, Topeka and Santa Fe Railway Co.* 261 Ill. 33; *People ex rel. Batman* v. *Illinois Cen-*

*tral Railroad Co.* 366 Ill. 408; *People ex rel. Manifold* v. *Wabash Railway Co.* 386 Ill. 149.

In the present case appellee has made no clear showing of an abuse of discretion. Insofar as the record shows it relies solely upon the implications which arise from the fact that the county levied a tax of $151,275 while it had approximately $147,000 in its treasury. There is, however, no showing by clear and explicit evidence either that all of such balance could be used for expenses of the county, (cf. *People ex rel. Stevenson* v. *Atchison, Topeka and Santa Fe Railway Co.* 261 Ill. 33,) or that such amount was more than would be necessary to permit the county to operate on a cash basis while the 1952 taxes were in the process of collection. (*Cf. People ex rel. Bergan* v. *New York Central Railroad Co.* 392 Ill. 525.) Appellee states that the county court decided as a question of fact that a cash balance of $101,000 was not unreasonable, yet the record does not disclose what those facts were. Manifestly, therefore, there is no clear showing that the county board committed an abuse of discretion in making the levy it did and we must hold, on the record presented, that the county court erred in substituting its discretion for that of the taxing body.

Appellee also objected to certain items contained in the levy for general county purposes the first of which were: $1000 for the acquisition of motor vehicles, $1500 for the maintenance and operation of such vehicles, and $500 for repairs and parts. The county court overruled the objection to the levy for acquisition but sustained the objection to the items for maintenance, operation, repair and parts. The objection states that each of the items were levied for the sheriff's office and were, therefore, in violation of section 10 of article X of the constitution which provides: "The county board, except as provided in Section 9 of this article, shall fix the compensation of all county officers, with the amount of their necessary clerk hire, stationery, fuel

and other expenses  *  *  *  and in all cases where fees are provided for, said compensation shall be paid only out of, and shall in no instance exceed, the fees actually collected." It is argued that under this section the items for the maintenance, operation, repair and parts of the sheriff's vehicles are expenses of the office payable only out of fees collected and hence that the county could not appropriate money or levy taxes for the payment of the same. Appellant, who states in argument that the levies relate to three county vehicles only one of which is assigned to the sheriff, asserts that they are not chargeable to the sheriff as part of his compensation and that there is statutory authority for the levy of each item.

By the first proviso of section 24 of the Counties Act, (Ill. Rev. Stat. 1951, chap. 34, par. 24,) counties are invested with the express authority "To purchase and hold the real and personal estate necessary for the uses of the county." By the third proviso of the same section they are empowered "To make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers." Having thus provided for the acquisition of property, the legislature, by section 25.01 of the Counties Act, has ordained that the county board shall have the power "To take and have the care and custody of all the real and personal estate owned by the county." When these express authorizations are considered, we are of the opinion that little doubt can arise but that a county may, at its own expense, acquire vehicles for use by its sheriff if the county board, in the exercise of its discretion, reasonably believes they are necessary for the proper discharge of the corporate duties delegated to the sheriff's office. The same would be true of the purchase of radio, radar and other scientific devices which become necessary for the efficient and proper discharge of the sheriff's duties. Having been charged with the care and custody of property so purchased it would

follow in sequence that the county board is also charged with the duty of keeping such equipment in repair so that it could be used for the county purposes for which it was purchased. While the custody of the vehicle in the instant case is given to the sheriff, his authority to use and retain it is subject to the control of the county board whom the statute charges with its care. When the express powers and duties prescribed by statute are considered, we are of the opinion that it cannot be seriously contended that the cost of repairing and replacing parts of a county-owned vehicle is not a proper corporate expense for which the county may levy and collect taxes.

Insofar as the item levied for the expense of maintaining and operating the sheriff's vehicle is concerned, the case of *People ex rel. Goodman* v. *Wabash Railroad Co.* 395 Ill. 520, is decisive on the objection now made. There the objection was to an item for "sheriff, car expense for patrolling roads." We held (p. 533) that since a sheriff is, by statute (Ill. Rev. Stat. 1951, chap. 53, par. 37,) entitled to fees for patrolling public highways and conveying prisoners, such fees may be paid out of the public treasury without violating section 10 of article X of the constitution. The rationale of the decision was that even though such fees are earnings of the office, and accountable as such, they are nevertheless fees which the county is liable to pay and it is stated that it makes no difference whether the money is paid as fees for services rendered or as expenses of the sheriff's office. In the absence of any showing in the present case that the levy for the expense of operating and maintaining the sheriff's vehicle was for purposes other than those for which the county is obligated by statute to pay, we conclude that it was properly levied for lawful purposes.

The next item of the county levy objected to by appellee and sustained by the county court was the levy of $1000 for the payment of premiums on the surety bonds

of county officials. Without citation of specific authority appellee again reasons that such item is an expense of the office contemplated by the constitutional provision rather than a corporate expense of the county. We find, however, that the question is conclusively answered by the statute relating to the cost of official bonds, (Ill. Rev. Stat. 1951, chap. 103, par. 16,) which expressly directs that the cost of any official bond furnished by county officers in compliance with any law, rule or regulation, shall be paid out of the funds of the county. Inasmuch therefore as the levy was for the purpose of creating a fund to pay a liability imposed upon the county by statute, it was proper and the objection should have been overruled.

The concluding item of the county levy to which appellee objected was that of $2500 for the purchase of right of way for State aid roads, an item which this court found to be a proper county purpose in *McKean* v. *County of Carroll,* 324 Ill. 243. It is conceded that authority for the levy is conferred upon the county by sections 25.05, 25.10 and 56 of the Counties Act. (Ill. Rev. Stat. 1951, chap. 34, pars. 25.05, 25.10 and 57.) The first section referred to authorizes the county to levy and collect taxes annually for county purposes, the second confers power "To widen or otherwise improve any county or state highway within the county, in the discretion of the county board, including state roads taken over and maintained by the State, * * *" while the third provides that the county board "shall have power to appropriate funds to aid in the construction of roads and bridges in any part of the county, whenever a majority of the whole board of the county may deem it proper and expedient, * * *." From the stipulated facts, however, it appears that the board also levied the county highway tax authorized by the State Highways Act, (Ill. Rev. Stat. 1951, chap. 121, par. 304,) and it is the contention of appellee that both taxes cannot be levied. In other words it is appellee's argument that if the county

highway tax authorized by the State Highways Act is levied, the general powers bestowed by the Counties Act relative to levying taxes for the improvement and construction of roads are abrogated.

On several occasions, shortly after the enactment of the Roads and Bridges Act of 1913 (Laws of 1913, pp. 520-581,) had posed similar taxing problems, this court held that the passage of the act did not repeal, limit or modify the taxing powers with respect to roads and bridges conferred by the Counties Act, that the county board continued to have discretionary power to aid in their construction apart from the provisions of the Roads and Bridges Act, and that the provisions of the latter did not exclude the exercise of the general authority to raise taxes for road and bridge purposes (*People ex rel. Krebs* v. *Jacksonville and St. Louis Railway Co.* 265 Ill. 550; *People ex rel. Thomas* v. *Wabash Railroad Co.* 265 Ill. 530; *People ex rel. Hewitt* v. *Kankakee and Seneca Railroad Co.* 265 Ill. 497; *Goodwine* v. *County of Vermilion,* 271 Ill. 126.) Nothing contained in the present chapter on Roads and Bridges, and particularly in paragraph 304 thereof, commands a different result, and since the authority conferred in each act exists independent of the other, there can be no merit in the contention that the exercise of the authority conferred by the State Highways Act abrogated the powers expressly given by the Counties Act. The same items may not, of course, be levied for in both the highway and county funds but such does not appear to have been done in this case. Appellee draws an inference from *People ex rel. McWard* v. *Wabash Railroad Co.* 395 Ill. 243, at 251, that funds to be expended in connection with State-aid roads may never be included in the county levy for general corporate purposes. However, in view of the language of section 25.10 of the Counties Act which gives the county power to widen and improve any county or State highway, including State roads taken over and maintained by the State, it would appear

that the distinction between State-aid and other roads contended for, does not exist. We conclude that the item was properly included in the levy for the county general fund.

The next objection of appellee embraced a claim that the tax levied for the tuberculosis sanitarium fund was excessive by $3594.07. Facts pertinent to the objection disclose that on September 12, 1944, the county board, acting in accordance with section 27 of the Counties Act, (Ill. Rev. Stat. 1943, chap. 34, par. 27,) adopted a resolution proclaiming the need of additional taxes for the purpose of providing care and treatment of persons afflicted with tuberculosis, and calling for a referendum vote upon the question of whether a levy of not exceeding $1\frac{1}{2}$ mills on the dollar, and in excess of the statutory limit of 25 cents on each $100 valuation, could be made for a period of ten years, beginning in 1944. In apparent compliance with the direction of section 27 that the board's order "set forth substantially the amount of such excess required," the resolution contained the provision "that the amount of such excess tax required in each year of the next ten (10) successive years, beginning with 1944, is not less than Thirty-six Thousand ($36,000) Dollars, nor more than Forty-four Thousand ($44,000) Dollars." Thereafter the people of the county voted on the proposition and authorized the additional tax for a period of ten years at a rate not to exceed $1\frac{1}{2}$ mills on the dollar of assessed valuation.

For the year 1952 there was an appropriation of $55,700 for tuberculosis fund purposes and a levy of $50,400. The tax was extended at a rate which would produce the sum of $47,594.07. Although the rate extended did not exceed the additional rate authorized by the voters, the amount produced was in excess of the $44,000 maximum fixed by the resolution of the board; hence appellee's claim that the tax was excessive by $3,594.07. It is appellant's contention that since the notice of election and the ballot made no mention of the $44,000 limitation, and because the rate

extended was within the additional rate stated on the ballot and authorized by the voters, the tax was valid in its entirety. The issue then is whether the maximum set by the resolution of the board operates to limit the amount of additional tax that may be raised.

When treating upon section 27 of the Counties Act and its predecessors, whereby counties have been permitted to raise taxes in excess of statutory and constitutional limits, this court has held that its provisions are to be strictly construed when examined from the standpoint of the county's power, and construed liberally when considered with reference to the protection of the taxpayer. (*People ex rel. Hargrave* v. *Baltimore and Ohio Railroad Co.* 394 Ill. 471; *Peoria and Pekin Union Railway Co.* v. *People ex rel. Knupp*, 198 Ill. 318.) The section provides that before the proposition for an additional tax can lawfully be submitted to the voters, the county board shall enter an order of record which shall set forth substantially the amount of excess required, the purpose for which it will be needed, and the number of years it will be required. Such order or resolution, it is held in the *Peoria and Pekin Union case* (p. 326), is the very basis of the grant of power to exact taxes in excess of legal limitations, and must itself be strictly construed.

Because the resolution in the present case did not in specific terms qualify the maximum amount set forth as being "substantially" the amount of excess to be required in each year, appellee contends that it is to be construed as fixing an absolute and self-imposed limitation of $44,000. Upon the same basis it is urged that the language employed led the voters to believe the maximum amount to be expended in each year for tuberculosis treatment would be no more than $44,000. As presented, appellee's argument ignores both the existence and effect of the minimum amount of $36,000 which was also contained in the resolution. Certainly there could be no serious contention either

that the latter amount in the resolution fixes an absolute minimum that must be raised in each year or that the board so intended. Considering the entire resolution it is apparent that the board was not striving for exact precision when it employed minimum and maximum figures but was attempting to do only what section 27 requires, namely, to estimate as nearly as possible the amount of excess required in each year. We think this was likewise apparent to the voters, particularly when it is considered they were informed the excess tax was for the purpose of meeting expenses yet to be determined, rather than a fixed indebtedness. (Cf. *Peoria and Pekin Union Railway* v. *People ex rel. Knupp,* 198 Ill. 318.) Under all the circumstances, it is apparent the amounts employed in the resolution could only be estimates and could only be understood as such. To say that the estimates became fixed limitations because they were not qualified with the word "substantially" is to enlarge upon the terms of section 27 which, as pointed out in *Central Illinois Public Service Co.* v. *Thompson,* 1 Ill.2d 468, is so phrased as to demonstrate the legislative awareness that the amount of excess to be needed for future years cannot be stated with precision where a fixed indebtedness is not involved. We conclude that the resolution of the board was nothing more than the estimate section 27 requires and that it does not have the effect of fixing an absolute maximum. Whether the amount estimated was substantially the amount of excess to be needed in each year must, of course, be determined from the facts of each case. Here, no contention is made that the amount of tax over the estimate is immoderate or unreasonable but we note in passing that it is substantially less than the excess approved by this court in the *Central Illinois Public Service case.* It was error for the court to sustain this objection on the grounds advanced.

Pursuant to authority conferred in the State Highways Act, (Ill. Rev. Stat. 1951, chap. 121, par. 304,) the county

board also levied a tax of $51,500 for "County Highway Fund—Acquisition and Maintenance of Machinery and Equipment." The section cited fixed the maximum rate extendable for such purposes at .0375 per cent in counties having less than 500,000 population and further provided that such limitation on rate was "subject to the provisions of the General Revenue Law of Illinois." In the instant case the county clerk extended the tax at a rate of .031 which appellee claims should have been reduced by .010 by application of the Revenue Act. The specific issue thus made is whether the rate in question was subject to being scaled down in accordance with the provisions of section 162a of the Revenue Act. (Ill. Rev. Stat. 1951, chap. 120, par. 643a.) When the language of the applicable statutes is read it is clear that the rate was properly not debased. Section 162a, as it existed in 1952, expressly stated that the restriction on maximum rates provided for therein should be applicable "unless modified by the provisions of Section 162b of this Act." Subparagraph (2) of section 162b (Ill. Rev. Stat. 1951, chap. 120, par. 643b(2),) in turn provided that the corporate authorities of every taxing district subject to the section "shall, not later than December 31, 1951, establish by ordinance or resolution the maximum permissible tax rate limitation that may be extended thereafter for each of its funds * * *." Under the terms of subparagraph (3) of the section if the resolution "establishes a maximum tax rate limit for a fund which is not greater than the tax rate limit in effect for said fund as of the date of adoption of the ordinance or resolution," such rate shall, without more, go into effect immediately. Thereafter subparagraph (10) provides: "Any tax rate limit for any fund established as provided in this Section 162b shall supercede any other tax rate limit for such fund established by any other applicable statute including Sec. 162a * * * of this Act, * * *."

The facts here show that the county board, on Novem-

ber 30, 1951, adopted a resolution establishing a permanent rate limit of .0375 per cent for the machinery and equipment segment of the county highway tax. The rate adopted was no greater than the tax-rate limit for such purposes fixed by the State Highways Act and thus, under section 162b(3), became immediately effective without the necessity of a referendum. By the terms of section 162b(10) it superseded the rate which would have otherwise been established under the debasement provisions of section 162a. Appellee's argument to the contrary assumes that "the tax rate limit in effect" mentioned in subsection (3) refers to the tax rate as scaled under the formulas of section 162a. Such a position is untenable in view of the fact that section 162b modifies section 162a, and that the stated purpose of section 162b is "to provide the procedure for an orderly change from maximum tax rate limits imposed by the General Assembly to maximum tax rate limits established locally on the basis of local needs." If the rate as debased was held to be the tax limit contemplated by subsection (3), there could be no change from the limit imposed by section 162a and subsection (3) would be rendered meaningless. We conclude that the rate of .031 was proper in this case and that the court erred in sustaining the objection made.

Appellee's final objection raises a question of the validity of a referendum whereby the qualified voters of School District No. 152, in Bureau County, authorized a tax-rate limit in excess of that fixed by the debasement provisions of section 162a of the Revenue Act. Statutory background shows that, in 1947, section 17—2 of the School Code, (Ill. Rev. Stat. 1947, chap. 122, par. 17—2,) authorized school districts of less than 500,000 inhabitants to levy a tax of not to exceed .50 per cent for educational purposes, but expressly stated that the limitation was subject to the provisions of section 162a of the Revenue Act. Section 17—3 of the code, also expressly made subject to the provisions of

the "General Revenue Law," provided that if such a school district desired in any one year to levy more than the rate authorized by section 17—2 it could cause the proposition to be submitted to the voters and, in the event a majority of the votes being favorable, could levy annually the tax authorized until such time as the authority was revoked in like manner. An interrelated provision of the Revenue Act, found in subsection (3) of section 162a, was that the ballot to be used in a referendum such as contemplated by section 17—3, would be substantially in a form which would cause the voters to vote "Yes" or "No" on the following proposition: "Shall the maximum tax rate for the...... fund of......be established at......per cent on full, fair cash valued instead of......per cent, the maximum rate otherwise applicable to the next taxes to be extended?"

It is stipulated here that prior to September 15, 1947, the maximum tax rate for the educational fund of School District No. 152, under the debasing formula of section 162a, was .275 per cent. On the day named, however, at an election held pursuant to the statutes last discussed, the voters of the district voted favorably on a proposition to increase the rate which was stated on the ballot as follows: "Shall the maximum tax rate for the educational fund of School District No. 152 be established at .51 per cent on full, fair cash value instead of .50 per cent, the maximum rate otherwise applicable to the next taxes to be extended?" It does not appear that the authority so conferred had been revoked when the tax here under consideration was levied.

The 1952 tax for the district's educational fund was levied at .344 per cent. This is in excess of the rate authorized under the debasement provisions of section 162a applied to the .50 per cent maximum set forth in section 17-2 of the School Code, but less than the .51 per cent rate set forth in the referendum, which rate is specifically excluded from the debasement provisions of section 162a. (Ill. Rev. Stat. 1945, chap. 120, par. 643a.) In this regard it is to

be noted that section 17—2 of the School Code, as it existed in 1952, still provided that the maximum rate for educational fund purposes was .50 per cent and that such rate was subject to the provisions of the "General Revenue Law." (Ill. Rev. Stat. 1951, chap. 122, par. 17—2.) Appellee's objection to the tax was that the rate was excessive by .069 per cent, the basis for such claim being that the referendum of 1947 was ineffective and void thus causing .275 per cent to be the highest rate that could be levied in 1952, *i.e.*, the normal rate of .50 per cent as reduced by the formula provisions of section 162a. Appellant contends, of course, that the 1947 election validly removed the questioned rate from the restrictions of section 162a and, in light of the .51 per cent rate authorized, insists that the rate levied was proper.

In claiming the 1947 referendum to be ineffective and void, it is appellee's contention that the proposition voted upon was improperly stated and had the effect of deceiving the voters as to the size of the tax increase being authorized. Appellee reasons that inasmuch as the .50 per cent maximum rate was, prior to the election, subject to the debasement provisions of section 162a, and the .51 per cent rate set forth in the referendum would not be subject to any debasement provision, therefore the reduced rate of .275 per cent was "the maximum rate otherwise applicable to the next taxes to be extended," and was the rate which should have been stated on the ballot instead of .50 per cent. Appellant's reply to such argument is that the proposition voted upon properly stated the maximum tax rate permissible for the educational fund under the provisions of section 17—2 of the School Code. The issue thus presented is whether the legislature intended the proposition on the ballot to reflect the maximum tax rate limit fixed in statutes subject to the Revenue Act, or the rate limit created by the restrictions imposed by section 162a.

We think the construction urged by appellee is the true one. The express language of section 162a as well as the

applicable decisions of this court, leave no doubt that the maximum rate at which the school district could extend the tax for its educational fund was, immediately prior to the 1947 election, the normal rate as reduced by the formula provisions of section 162a. (See: *People ex rel. Ross* v. *Chicago, Burlington and Quincy Railroad Co.* 411 Ill. 167, 169; *People ex rel. Harding* v. *Chicago and North Western Railway Co.* 413 Ill. 93, 95.) Without the authority conferred by referendum, such reduced rate was, in fact, the maximum rate otherwise applicable to the next taxes to be extended. Further, when it is considered that subsection (3) of section 162a was expressly designed to permit avoidance of the rate restrictions imposed by the section, it follows that the restricted rate, being the maximum rate applicable to the next taxes to be extended, was the one intended by the legislature to be shown on the ballot. That this is so is borne out by the further language of subsection (3) which provides: *"No proposition to increase a tax-rate limit above that provided by this Section, shall increase the tax-rate limit to more than the maximum tax-rate limit, \* \* \* afforded by the terms of any other applicable statutory provision \* \* \*."* [Emphasis supplied] Ill. Rev. Stat. 1947, chap. 120, par. 643a(3).

As demonstrated by the facts of this case, it could only be through the use of the reduced rate, the rate which would apply if the referendum failed or was not had, that the voters would be exactly informed of the size of the tax increase they were authorizing. Here the voters were led to believe they were authorizing an increase of 2 per cent when, in reality, they were authorizing an increase of almost 85 per cent over the amount of tax that would be produced by the maximum rate otherwise applicable to the next taxes to be extended.

Appellant contends that a contrary result was reached in *People ex rel. Ross* v. *Chicago, Burlington and Quincy Railroad Co.* 411 Ill. 167. The rationale of that decision

was that section 162a, as it existed in 1948, did not require a school district, before holding a referendum for a tax rate above the normal .50 per cent rate for educational purposes, to first submit to a referendum the proposition of whether the tax could be extended at the normal rate. We find nothing in the decision on the issue there presented which is to be construed as authority for deviating from the legislative direction as to how the proposition to exceed the normal rate should be presented to the voter. Although it be true no referendum is needed for authority to extend the normal rate authorized, when an attempt to exceed the normal rate is made, the voters should be fairly apprised of the amount of increase they are being asked to authorize. It is our conclusion therefore, that the objection to the school district's tax was correctly sustained.

For the reasons stated, the order of the county court is affirmed in part and reversed in part, and the cause is remanded to that court with directions to proceed in conformity with the views expressed in this opinion.

*Affirmed in part, reversed in part
and remanded, with directions.*